UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FELIX APONTE,

            Plaintiff,

    -v-

CITY OF NEW YORK, ADA PEREZ, BRIAN
FISCHER, ANTHONY J. ANNUCCI, LUCIEN J.
LECLAIRE, GLENN S. GOORD, ANDREA W.
EVANS, MARK MANTEI, ROBERT J. DENNISON,
ANTHONY G. ELLIS, and GEORGE B.
ALEXANDER,

            Defendants.

Case No. 14-CV-3989 (KMK)

OPINION & ORDER

---

Appearances:

Felix Aponte
Dannemora, New York
*Pro Se Plaintiff*

Katherine A. Byrns, Esq.
New York City Law Department
New York, NY
*Counsel for Defendant City of New York*[1]

KENNETH M. KARAS, District Judge:

       Plaintiff Felix Aponte ("Plaintiff"), proceeding pro se, is incarcerated at Clinton

Correctional Facility and brings this action under 42 U.S.C. § 1983 against Defendants City of

New York ("the City"), Brian Fischer, as Commissioner of the New York State Department of

Correctional Services ("DOCS"), Anthony J. Annucci, as Deputy Commissioner and Counselor

---

      [1] The Court notes that no attorneys have yet appeared for Defendants Brian Fischer,
Anthony J. Annucci, Lucien J. Leclaire, or Glenn S. Goord.  Also, Defendants Andrea W. Evans,
Mark Mantei, Robert J. Dennison, Anthony G. Ellis, and George B. Alexander have not been
served.

for DOCS, Lucien J. Leclaire, Jr., as former acting Commissioner of DOCS, Glenn S. Goord, as former Commissioner of DOCS, Andrea W. Evans, as Chair and Chief Executive Officer of the New York State Division of Parole ("DOP"), Mark Mantei, as Executive Director of DOP, Robert J. Dennison, as former Chair of DOP, Anthony G. Ellis II, as former Executive Director of DOP, and George B. Alexander, as former Chair and Chief Executive Officer of DOP (collectively, "Defendants").  Plaintiff alleges that the City is liable for the actions of its employees and that the individual defendants are liable for the actions of their subordinates for violating his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.  The City moves to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state a claim against the City for municipal liability under either federal or state law; Plaintiff did not provide sufficient notice of claim; and Plaintiff neglected to commence his claim before the exhaustion of the relevant statute of limitations.  (*See* City's Mem. of Law in Supp. of Mot. To Dismiss ("City's Mem.") 2 (Dkt. No. 61).)  For the following reasons, the City's Motion To Dismiss is granted, although Plaintiff is granted leave to amend his complaint.

## I. Background

### A. Factual Background

The following facts are collected from Plaintiff's Second Amended Complaint.  Plaintiff pled guilty to attempted robbery in the first degree on April 25, 2000 and was subsequently sentenced to eight years' imprisonment on May 5, 2000.  (Second Am. Compl. ¶¶ 10–11 (Dkt. No. 51).)  Plaintiff alleges that "[n]o mention was made of post-release supervision at [the] plea or sentence, nor was any such term recorded on the sentencing commitment order."  (*Id.* ¶ 11.)  Plaintiff completed his term of imprisonment on May 2, 2008.  (*Id.* ¶ 13.)

In May 2008, Plaintiff was moved to Rikers Island for violating the terms of his supervised release package, then later moved again to: Livingston Correctional Facility, Edgecombe Residential Treatment Center, Gouverneur Correctional Facility, Ulster Correctional Facility, Queensboro Correctional Facility, Collins Correctional Facility, Five Points Correctional Facility, Upstate Correction Facility, and, finally, Clinton Correctional Facility.  (*Id.* ¶ 26; Pl's Pro Se Mem. (Dkt. No. 58).)  Plaintiff alleges that "[D]efendants intended to and did confine [P]laintiff," (Second Am. Compl. ¶ 20), and claims that he was still incarcerated when he drafted the Second Amended Complaint in November 2014—"[s]ix years and four months" after he had "completed his [original] sentence," (*id.* ¶ 25).

On November 20, 2012, the New York Appellate Division reversed an order issued in May 2010 denying Plaintiff's motion to set aside a resentence of "a term of eight year[s] with three years Post[-]Release Supervision," and reinstated "the original sentence of eight years without Post[-]Release Supervision."  (*Id.* ¶ 24.)  Plaintiff received the letter on September 5, 2013, "while incarcerated at Upstate Correctional Facility."  (*Id.* ¶ 25, Ex. A, at unnumbered 15.[2])

Plaintiff asserts that "[t]his is a case of false imprisonment, illegal detainment, illegal negotiation of [P]ost[-R]elease [S]upervision, and violation of [P]laintiff[']s United States [c]onstitutional [r]ights . . . ."  (*Id.* ¶ 19.)  Plaintiff claims that Defendants are responsible "for violation of Plaintiff[']s rights under the . . . Fifth Amendment [double jeopardy], Six[th] Amendment [Civil Rights, deprivation of rights], Eighth Amendment [cruel and unusual punishment], Fourteenth Amendment [procedural due process], [and] New York Constitution

---

[2] Because the pages of the exhibits appended to the Second Amended Complaint are not consistently numbered, the Court cites to the ECF-generated page numbers in the upper right-hand corner.

Art[.] I, §[ ]6 . . . ." (*Id.* ¶¶ 28–30 (descriptive alterations in original).)  As a result, he claims to have experienced "pain, suffering, [and] physical and emotional distress," (*id.*), and alleges that he "will continue to be irreparably injured by the conduct of . . . [D]efendants unless this court grants the compensatory damages relief which [P]laintiff seeks," (*id.* ¶ 31).

Based on the foregoing allegations, Plaintiff requests relief in the form of "a declaration that the acts and omissions described herein violated [P]laintiff's rights under the Constitution and laws of the United States and the State of New York"; "compensatory damages in the amount of $3,000,000.00 plus interest, against each [D]efendant, jointly and severally"; "[p]unitive damages in the amount of $3,000,000.00 plus interest against each [D]efendant"; "a jury trial on all issues triable by jury"; and "recovery of the costs in this suit"; along with "[a]ny additional relief this court deems just, proper and equitable." (*Id.* ¶¶ 32–37.)

B.  Procedural Background

Plaintiff filed his original complaint along with a request to proceed in forma pauperis on May 29, 2014.  (*See* Dkt. Nos. 1–2.)  Then-Chief Judge Preska granted Plaintiff's request to proceed in forma pauperis on June 25, 2014.  (*See* Dkt. No. 3.)  Plaintiff requested and was granted the opportunity to amend his Complaint on October 29, 2014, (*see* Dkt. No. 7), and filed the Amended Complaint on December 1, 2014, (*see* Dkt. No. 10).  On March 3, 2015, the City filed its Motion To Dismiss the Amended Complaint and accompanying papers.  (*See* Dkt. Nos. 23–25.)  By letter dated March 8, 2015, Plaintiff requested an additional 120 days to submit his Opposition; however, the Court granted Plaintiff a somewhat shorter extension to May 2, 2015. (*See* Dkt. No. 28.)  By letter dated April 30, 2015, Plaintiff informed the Court that he was "close to mailing [his] opposition," but expressed his "hope that [the Court] [would] grant [Plaintiff] the time [he] need[ed] to file a second amend[ed] complaint."  (*See* Pl.'s Letter to Court (May 8,

2015) 1 (Dkt. No. 43).)  Plaintiff also filed an Opposition to the Motion To Dismiss on May 14, 2015, (*see* Dkt. No. 46), and the City replied in support of its Motion To Dismiss on May 27, 2015, (*see* Dkt. No. 48).  On June 18, 2015, the Court denied the Motion To Dismiss on the ground that Plaintiff had indicated that he wished to file a Second Amended Complaint.  (*See* Dkt. No. 49.)

Plaintiff filed his Second Amended Complaint on August 10, 2015.  (*See* Dkt. No. 51.) By memo endorsement on August 31, 2015, the Court granted the City leave to move for dismissal by September 24, 2015, and instructed Plaintiff to submit any opposition by October 26, 2015.  (*See* Dkt. No. 56.)  The City filed its Motion To Dismiss the Second Amended Complaint and accompanying papers on September 23, 2015, (*see* Dkt. Nos. 59–61); Plaintiff never responded.  By letter dated October 29, 2015, the City requested that its motion be deemed fully submitted.  (*See* Dkt. No. 62.)

## II.  Discussion

### A.  Standard of Review

The City moves to dismiss Plaintiff's Second Amended Complaint on the grounds that Plaintiff fails to state a claim for municipal liability under either federal or state law and that Plaintiff failed to adhere to procedural requirements under New York General Municipal Law. (*See* City's Mem. 5, 7–9.)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alterations omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570; however, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as

true . . . ." (internal quotation marks and alterations omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit."  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (citation, internal quotation marks, and some alterations omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Lastly, because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest."  *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006).  However, the liberal treatment afforded to pro se litigants does not excuse a pro se party "from compliance with relevant rules of procedural and substantive law."  *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

B. <u>Analysis</u>

1. <u>Municipal Liability Under Federal Law</u>

The City argues that because respondeat superior is not available to establish vicarious liability under 42 U.S.C. § 1983, Plaintiff's only option to obtain relief from the City under § 1983 is to "show that [the City maintained] a municipal policy or custom [that] caused the deprivation of his constitutional rights"—and contends that Plaintiff has failed to do so. (City's Mem. 5–6 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91, 694–95 (1978)).)

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against municipal agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing claim against county because the complaint did "not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 15, 2010). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Sherrard v. City of New York*, No. 15-CV-7318, 2016 WL 1574129, at *7 (S.D.N.Y. Apr.

8

15, 2016) ("Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." (alterations and internal quotation marks omitted)).  In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity itself commits a wrong" (italics omitted)). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (plurality opinion) ("[G]overnmental bodies can act only through natural persons, . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

A plaintiff may satisfy the "policy or custom" requirement by alleging (i) "a formal policy officially endorsed by the municipality," (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question," (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware," or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."  *Murchison-Allman v. City of New York*, No. 14-CV-2160, 2016 WL 1322445, at *5 (S.D.N.Y. Mar. 31, 2016) (citation omitted).  Under the third method, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that

the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404; *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). "Therefore, a plaintiff may establish municipal liability by demonstrating that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Donohue v. Manetti*, No. 15-CV-636, 2016 WL 740439, at *5 (E.D.N.Y. Feb. 24, 2016) (internal quotation marks omitted). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik*, 485 U.S. at 127 (noting that "the [Supreme] Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970))).

"[G]enerally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Hixon v. City of New York*, No. 14-CV-2504, 2015 WL 4470078, at *4 (S.D.N.Y. July 13, 2015) (internal quotation marks omitted); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). In the end, "a plaintiff must demonstrate that,

through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404); *see also Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional violation*. There must at least be an affirmative link between [, for example,] the training inadequacies alleged and the particular constitutional violation at issue."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Wiltshire v. Williams*, No. 10-CV-6947, 2012 WL 899383, at *10 (S.D.N.Y. Mar. 16, 2012) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At this stage, Plaintiff need not prove these elements, but he must still plead them sufficiently to make out a plausible claim for relief. Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted). Thus, to survive the Motion To Dismiss, Plaintiff cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Here, Plaintiff has come up short on each front: far from alleging the existence of "a formal policy officially endorsed by the municipality," *Murchison-Allman*, 2016 WL 1322445, at

*5, he merely alleges that the City is responsible for all of its agencies and that the individual Defendants engaged in illegal conduct, (*see* Second Am. Compl. ¶¶ 28–30).  Plaintiff does not attribute Defendants' actions to any official policy and makes no claim that any Defendant was in a position of policymaking authority relevant to this case, that an informal practice of "illegal[] detain[ment] and incarcerat[ion]" was so prevalent among Defendants as to amount to a custom, or that Defendants failed to provide adequate training or supervision to the point of "deliberate indifference," (*see generally* Second Am. Compl.), and, therefore, fails to satisfy the "policy or custom" requirement, *Murchison-Allman*, 2016 WL 1322445, at *5.  At best, Plaintiff has alleged a violation of his constitutional rights; however, because "[p]roof of a single incident of unconstitutional activity is," absent something more, "not sufficient to impose liability under *Monell*," *Tuttle*, 471 U.S. at 823–24, his § 1983 claim against the City must be dismissed.

More importantly, Plaintiff makes two inconsistent statements: first, that an employment relationship exists between the individual Defendants and the City (claiming that the City "hire[d] in a leadership position . . . all of the defendants herein," (Second Am. Compl. ¶ 28))—a conclusory claim for which Plaintiff provides no factual grounding—and second, that the Defendants are employees of New York State, (*id.* ¶¶ 29–30).  As the City notes, "the only government officials who [P]laintiff identifies as having been involved in the alleged violations of his rights are a variety of New York State agencies and officials."  (City's Mem. 7.)

The Court takes judicial notice of the fact that all of the individual Defendants are employees of New York State, rather than New York City.  "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Various courts in the

Second Circuit have taken judicial notice of public information regarding relevant parties in a lawsuit. *See, e.g.*, *Abdullah v. IRA Velers Ins. Co.*, No. 13-CV-07825, 2014 U.S. Dist. LEXIS 171288, at *12 n.9 (S.D.N.Y. Oct. 28, 2014) (taking judicial notice "of the fact that no such insurance company [as the plaintiff alleges] is currently registered to do business in New York, based on available, online public records" and concluding that the plaintiffs had therefore improperly named the insurance company as a defendant); *Mathis v. Bess*, 761 F. Supp. 1023, 1028 (S.D.N.Y. 1991) (taking judicial notice "of the fact that defendants Rosenblatt and Reynolds no longer hold" the "official positions on which they were sued" and "dismiss[ing] plaintiffs' claims for injunctive relief as to [those defendants]"); *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 238 n.22 (E.D.N.Y. 2014) (taking judicial notice "that Underwriters Laboratory is[,] [according to its website,] 'a global independent safety science company' that promulgates safety standards" (citation omitted)).

Similarly, the fact that the individual Defendants are state employees rather than city employees is "generally known" and can be "readily determined."  Aside from Plaintiff's descriptions of Defendants in the Second Amended Complaint as holding various positions within either the New York *State* Department of Correctional Services or the New York *State* Division of Parole, (*see* Second Am. Compl. 1–4 (neglecting to include the State as a defendant but listing for each individual Defendant an affiliated agency, each of which bears the phrase "New York State" in its name)), case law and the New York State Department of Corrections and Community Supervision ("DOCCS") website clarify that DOCCS and its formerly separate components, DOCS and DOP, are state agencies whose officials qualify as state employees,[3] *see*

---

[3] DOCS and DOP combined in April 2011 to create DOCCS.  *See* State of New York Department of Correctional Services, *Testimony of Brian Fischer, Commissioner* 2 (Apr. 27, 2011), http://ojp.gov/reviewpanel/pdfs_apr11/testimony_fischer.pdf ("This month, we have

*Flynn v. Ward*, No. 15-CV-1028, 2015 WL 8056060, at *4 (N.D.N.Y. Dec. 4, 2015) (implying

that "DOCCS Directives" are "state law[s] or regulation[s]" and that DOCCS employees are

"state employee[s]" (citations omitted)); *Gagne v. Fix*, No. 11-CV-361, 2014 WL 950130, at *5

& n.11 (W.D.N.Y. Mar. 11, 2014) (indicating that "employees of DOCCS" are "state

employee[s]"); *Collier v. Harter*, No. 04-CV-6514, 2012 WL 1495366, at *11 (W.D.N.Y. Apr.

27, 2012) (identifying "DOCCS policy" as a "state regulation or internal policy," and a DOCCS

employee as a "state employee" (citation omitted)); *Gill v. Erickson*, No. 03-CV-98, 2007 WL

642593, at *1 (W.D.N.Y. Feb. 26, 2007) (describing a DOCS employee as one of several "New

York State employee defendants"); *see also Government: Your New York State Government*, The

Official Website of New York State, http://www.ny.gov/agencies#all-agencies (last visited Aug.

23, 2016) (identifying DOCCS as a New York State government agency).

      Accordingly, because none of the misconduct alleged was committed by City employees,

Plaintiff fails to state a claim for municipal liability against the City.  His claim against the City

under 42 U.S.C. § 1983 is therefore dismissed.

      The Court strongly suspects that Plaintiff intended to name the State as a defendant and

not the City.  For that reason, Plaintiff is granted leave to amend his complaint one final time,

bearing in mind the requirements of pleading a *Monell* claim as described herein.

### 2. <u>Municipal Liability Under State Law</u>

      The City next addresses a possible New York State common law claim of respondeat

superior liability, assuming that Plaintiff intended to assert such a claim in the Second Amended

Complaint.  As the City correctly notes, (*see* City's Mem. 7), in contrast to claims brought under

---

begun a new chapter in our history, by merging [New York State Department of Correctional
Services] with New York State Division of Parole.  Our two agencies are now identified as the
New York State Department of Corrections and Community Supervision (DOCCS).").

14

42 U.S.C. § 1983, respondeat superior liability does apply to claims brought under New York

state law, *see, e.g.*, *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010)

(dismissing *Monell* claims against municipality before adding that the plaintiff's "remaining state

law claim of assault and battery against the [municipality] [was] alive due to the potential for

vicarious liability for actions of its police officers as its employees"); *L.B. v. Town of Chester*,

232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under § 1983, municipalities

may be liable for the common law torts . . . committed by their employees under the doctrine of

respondeat superior." (italics omitted)).  Under this doctrine, an employer can be held

"vicariously liable for torts committed by an employee acting within the scope of the

employment . . . , so long as the tortious conduct is generally foreseeable and a natural incident

of the employment."  *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 808 N.E.2d 1263,

1265–66 (N.Y. 2004) (internal quotation marks omitted).  "An employee's actions fall within the

scope of employment where the purpose in performing such actions is 'to further the employer's

interest, or to carry out duties incumbent upon the employee in furthering the employer's

business.'"  *Guzman v. United States*, No. 11-CV-5834, 2013 WL 543343, at *9 (S.D.N.Y. Feb.

14, 2013) (quoting *Beauchamp v. City of New York*, 771 N.Y.S.2d 129, 131 (App. Div. 2004)),

*reconsideration granted in part on other grounds*, 2013 WL 5018553 (S.D.N.Y. Sept. 13, 2013);

*see also De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 416 (S.D.N.Y. 2015) (same).

"Because the question of whether an officer's actions 'were committed within the scope of his

public employment and the discharge of his duties raises factual questions,' such inquiries often

survive motions for summary judgment, let alone motions to dismiss,"  *Guzman*, 2013 WL

543343, at *9; however, in appropriate circumstances, a respondeat superior claim can be

disposed of upon a motion to dismiss, *see Sgaliordich v. Lloyd's Asset Mgmt.*, No. 10-CV-3669,

2011 WL 441705, at *4 (E.D.N.Y. Feb. 8, 2011) (granting motion to dismiss respondeat superior claim because "[the] [p]laintiff [did] not plead[] sufficient facts concerning the employment relationship between [the defendant] and [the putative employees]"); *L.B.*, 232 F. Supp. 2d at 239 (dismissing respondeat superior claim against a town for actions of employees of a different city, reasoning that the "[p]laintiff [did] not allege[] facts that would support the degree of control . . . that would substitute for the lack of an employment relationship that would typically provide the basis of liability").

As previously noted, Plaintiff does not identify City employees who could provide the requisite link establishing respondeat superior liability, instead naming exclusively New York State employees as individual Defendants.  (*See* Second Am. Compl. 1, ¶¶ 28–30.)  This omission bars Plaintiff from establishing respondeat superior liability on the part of the City of New York, even if Plaintiff were to assert the claim under a statute where such liability is generally permissible.  Plaintiff's common law claim against the City under New York State common law is consequently dismissed, although the Court will, as noted above, provide Plaintiff leave to amend his complaint one more time if he wishes to reevaluate whether he intends to bring claims against the City or the State.

### 3. Compliance with New York General Municipal Law

In addition to its arguments regarding its liability under § 1983 and common law respondeat superior, the City makes two arguments concerning Plaintiff's compliance with the requisite procedures governing tort claims brought against New York municipalities: first, that Plaintiff did not file a notice of claim as required; and, second, that Plaintiff's claim is untimely. (*See* City's Mem. 8–10.)  Although the Court has already determined that Plaintiff has failed to state a claim against the City, Plaintiff's claims against the City fail for the additional reason that

Plaintiff failed to file a notice of claim.  The Court declines to decide whether Plaintiff's claims are timely.

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims."  *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (italics omitted); *see also Croci v. Town of Haverstraw*, — F. Supp. 3d —, 2016 WL 1274582, at *9 (S.D.N.Y. Mar. 31, 2016) (same); *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) (same). Under New York law, "[n]o action . . . shall be prosecuted or maintained against a city . . . for personal injury . . . alleged to have been sustained by reason of the . . . wrongful act . . . of any officer, agent or employee" of the city unless "a notice of claim shall have been made and served upon the city . . . in compliance with [§ 50-e] . . . ."  N.Y. Gen. Mun. Law § 50-i(1).  Under this provision, "[t]o survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed," *El v. City of New York*, No. 14-CV-9055, 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015); *see also, e.g.*, *Razzano v. County of Nassau*, 599 F. Supp. 2d 345, 354 (E.D.N.Y. 2009) ("Under Section 50–i, a plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim." (alterations and internal quotation marks omitted)).  This provision applies to the false imprisonment claims brought against the City.  *See, e.g.*, *Jones v. City of New York*, No. 13-CV-929, 2016 WL 1322443, at *5 (S.D.N.Y. Mar. 31, 2016) (dismissing false imprisonment claim brought against the City and police officers, where, among other things, "[the] [p]laintiff [did] not indicate[] that he . . . filed a notice of claim pursuant to New York General Municipal Law Section 50-e."); *Jean v. City of New York*, No. 08-CV-157, 2009 WL 3459469, at *10 (E.D.N.Y. Oct. 22, 2009) ("[The plaintiff] never filed any notice of claim for . . . his . . . false imprisonment claim . . . .  The [c]ourt therefore must dismiss [his] claims brought under state law."), *aff'd sub nom. Jean v. Montina*, 412 F. App'x 352 (2d Cir. 2011).

17

Here, the Second Amended Complaint is devoid of any allegations relating to Plaintiff's compliance with the requisite notice provisions. Accordingly, even if Plaintiff had stated a claim against the City pursuant to § 1983 or common law respondeat superior, Plaintiff's claims against the City must be dismissed for noncompliance with state notice-of-claim requirements. *See Jean*, 2009 WL 3459469, at *10.

## III. Conclusion

Accordingly, Defendants' Motion To Dismiss is granted. However, because this result was dictated in part by deficiencies in Plaintiff's Second Amended Complaint, Plaintiff will be afforded one last opportunity to amend it within 30 days of the date of this Opinion. The Clerk is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 59.)

SO ORDERED.

Dated:     September 26, 2016
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

18