UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELIX APONTE,

                    Plaintiff,

          -v-

BRIAN FISCHER, ANTHONY J. ANNUCCI,
LUCIEN J. LECLAIRE, GLENN S. GOORD,
ANDREA W. EVANS, MARK MANTEI, ROBERT
J. DENNISON, ANTHONY G. ELLIS, and GEORGE
B. ALEXANDER,

                    Defendants.

Case No. 14-CV-3989 (KMK)

OPINION & ORDER

Appearances:

Felix Aponte
Dannemora, New York
*Pro Se Plaintiff*

Michael J. Keane, Esq.
Office of the New York Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

          Plaintiff Felix Aponte ("Plaintiff"), proceeding pro se, is incarcerated at Clinton

Correctional Facility and brings this action under 42 U.S.C. § 1983 against Defendants Brian

Fischer ("Fischer"), former Commissioner of the New York State Department of Correctional

Services ("DOCS"); Anthony J. Annucci ("Annucci"), Acting Commissioner of the New York

State Department of Corrections and Community Supervision ("DOCCS") and former Deputy

Commissioner and Counsel for DOCS; Lucien J. LeClaire, Jr. ("LeClaire"), former acting

Commissioner of DOCS; Glenn S. Goord ("Goord"), former Commissioner of DOCS; Andrea

W. Evans ("Evans"), Chair and Chief Executive Officer of the New York State Division of Parole ("DOP"); Mark Mantei ("Mantei"), Executive Director of DOP; Robert J. Dennison ("Dennison"), former Chair of DOP; Anthony G. Ellis II ("Ellis"), former Executive Director of DOP; and George B. Alexander ("Alexander"), former Chair and Chief Executive Officer of DOP (collectively, "Defendants").[1]  Plaintiff alleges that Defendants are liable, in their individual and official capacities, for the actions of their subordinates for violating his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments and the New York State Constitution.  Defendants move to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) Plaintiff fails to state a claim against Defendants for unlawful confinement or false imprisonment, violations of the Double Jeopardy Clause, or violations of the Due Process Clause; (2) Plaintiff fails to allege that Defendants were personally involved in any conduct related to Plaintiff's post-release supervision; (3) Defendants are entitled to qualified immunity; (4) Plaintiff's official capacity claims are barred by sovereign immunity; and (5) Plaintiff's state law claims are barred by N.Y. Correction Law § 24.  (*See* Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") 3–4 (Dkt. No. 85).)[2]  For the following reasons, Defendants' Motion To Dismiss is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are collected from Plaintiff's Second Amended Complaint, and are assumed to be true for purposes of deciding the Motion To Dismiss.  Plaintiff pled guilty to

---

[1] For the sake of clarity, the Court notes that DOCS is the predecessor agency to DOCCS.

[2] All Defendants except for Mantei have joined in this Motion.  As noted below, Maintei has not yet been served in this case.

attempted robbery in the first degree on April 25, 2000 and was subsequently sentenced to eight years' imprisonment on May 5, 2000. (*See* Second Am. Compl. ("SAC") ¶¶ 10–11 (Dkt. No. 51).) However, "[n]o mention was made of post-release supervision [("PRS")] at [the] plea or sentence, nor was any such term recorded on the sentencing commitment order." (*Id.* ¶ 11.) Plaintiff completed his term of imprisonment on May 2, 2008. (*See id.* ¶ 13.)

At an unspecified time in May 2008, Plaintiff was incarcerated at Rikers Island for violating the terms of what he alleges was an "administratively imposed term of [PRS]." (*Id.* ¶ 15.) Shortly thereafter, on June 20, 2008, Plaintiff's case was referred back to initial the sentencing court to determine what should be done about the initial failure to impose a PRS term. (*See id.* ¶ 14.) Upon this referral, Plaintiff was resentenced on June 20, 2008 to the same term of eight years of imprisonment as in May 2000, but was additionally resentenced to a judicially imposed term of "three years' [PRS]," which was intended to be applicable to his May 2000 sentence. (*See id.* Ex. A, at unnumbered 15; Ex. B, at unnumbered 19.)[3] Following his resentencing, Plaintiff was later moved over the course of several years to Downstate Correctional Facility, Livingston Correctional Facility, Edgecombe Residential Treatment Center, Gouverneur Correctional Facility, Ulster Correctional Facility, Queensboro Correctional Facility, Collins Correctional Facility, Five Points Correctional Facility, Upstate Correction Facility, and, finally, Clinton Correctional Facility. (*Id.* ¶ 26.) Plaintiff claims that he was still incarcerated when he drafted the Second Amended Complaint in November 2014—"[s]ix years and four months" after he had "completed his [original] sentence," (*id.* ¶ 25), though it is not alleged that he is being confined pursuant to the initial PRS violation.

---

[3] Because the pages of the exhibits appended to the Second Amended Complaint are not consistently numbered, the Court cites to the ECF-generated page numbers in the upper right-hand corner.

On November 20, 2012, the New York Appellate Division reversed an order issued in May 2010 denying Plaintiff's motion to set aside the sentence imposed on June 20, 2008 of "a term of eight year[s] with three years [PRS]," and reinstated "the original sentence of eight years without [PRS]." (*Id.* ¶ 24.) Plaintiff received the letter on September 5, 2013, "while incarcerated at Upstate Correctional Facility." (*Id.* ¶ 25, Ex. C, at unnumbered 21.)

Plaintiff asserts that "[t]his is a case of false imprisonment, illegal detainment, illegal negotiation of [PRS], and violation of [P]laintiff[']s United States [c]onstitutional [r]ights . . . ." (*Id.* ¶ 19.) Specifically, Plaintiff claims that Defendants "subject[ed] Plaintiff to unlawful custody by continuing to impose terms of [PRS] . . . that had been declared unlawful and arresting and re-incarcerating Plaintiff for technical violations of those terms." (*Id.* ¶ 9.) Accordingly, each Defendant is responsible "for violation of Plaintiff[']s rights under the . . . Fifth Amendment [double jeopardy], Six[th] Amendment [Civil Rights, deprivation of rights], Eighth Amendment [cruel and unusual punishment], Fourteenth Amendment [procedural due process], [and] New York Constitution Art[.] I, §[ ]6 . . . ." (*Id.* ¶¶ 28–30 (descriptive alterations in original).) As a result, Plaintiff claims to have experienced "pain, suffering, [and] physical and emotional distress," (*id.*), and alleges that he "will continue to be irreparably injured by the conduct of the [D]efendants unless this court grants the compensatory damages relief which [P]laintiff seeks," (*id.* ¶ 31).

Based on the foregoing allegations, Plaintiff requests relief in the form of "a declaration that the acts and omissions described herein violated [P]laintiff's rights under the Constitution and laws of the United States and the State of New York"; "compensatory damages in the amount of $3,000,000.00 plus interest, against each [D]efendant, jointly and severally"; "[p]unitive damages in the amount of $3,000,000.00 plus interest against each [D]efendant"; "a

jury trial on all issues triable by jury"; and "recovery of the costs in this suit"; along with "[a]ny additional relief this court deems just, proper and equitable." (*Id.* ¶¶ 32–37.)

B. Procedural Background

Plaintiff filed his original Complaint along with a request to proceed in forma pauperis on May 29, 2014. (*See* Dkt. Nos. 1–2.) Then-Chief Judge Preska granted Plaintiff's request to proceed in forma pauperis on June 25, 2014. (*See* Dkt. No. 3.) Plaintiff requested and was granted the opportunity to amend his Complaint on October 29, 2014, (*see* Dkt. No. 7), and filed the Amended Complaint on December 1, 2014, (*see* Dkt. No. 10). On March 3, 2015, former-Defendant City of New York (the "City") filed its Motion To Dismiss the Amended Complaint and accompanying papers. (*See* Dkt. Nos. 23–25.) By letter dated March 8, 2015, Plaintiff requested an additional 120 days to submit his Opposition; however, the Court granted Plaintiff a somewhat shorter extension to May 2, 2015. (*See* Dkt. No. 28.) By letter dated April 30, 2015, Plaintiff informed the Court that he was "close to mailing [his] opposition," but expressed his "hope that [the Court] [would] grant [Plaintiff] the time [he] need[ed] to file a second amend[ed] complaint." (*See* Pl.'s Letter to Court (May 8, 2015) 1 (Dkt. No. 43).) Plaintiff also filed an Opposition to the City's Motion To Dismiss on May 14, 2015, (*see* Dkt. No. 46), and the City replied in support of its Motion To Dismiss on May 27, 2015, (*see* Dkt. No. 48). On June 18, 2015, the Court denied the City's Motion To Dismiss on the ground that Plaintiff had indicated that he wished to file a Second Amended Complaint. (*See* Order (Dkt. No. 49).)

Plaintiff filed his Second Amended Complaint on August 10, 2015. (*See* SAC.) By memo endorsement on August 31, 2015, the Court granted the City leave to move for dismissal by September 24, 2015, and instructed Plaintiff to submit any opposition by October 26, 2015. (*See* Dkt. No. 56.) The City filed its Motion To Dismiss the Second Amended Complaint and

accompanying papers on September 23, 2015, (*see* Dkt. Nos. 59–61); Plaintiff never responded. On September 26, 2016, the Court granted the City's Motion without prejudice, holding that Plaintiff had failed to state a claim for municipal liability against the City pursuant to § 1983 and state common law, and had also failed to comply with state notice-of-claim requirements. (*See* Opinion & Order (Sept. 26, 2016) 14, 16, 18 (Dkt. No. 72).) Plaintiff was given 30 days to file a Third Amended Complaint, but failed to do so. Therefore, on December 20, 2016, the Court dismissed Plaintiff's claims against the City with prejudice. (*See* Order (Dkt. No. 78).)

Meanwhile, by December 19, 2016, all individual Defendants except Mantei had been served in this Action. (*See* Dkt. Nos. 76–77.) Mantei has yet to be served. By memo endorsement on March 1, 2017, the Court granted the remaining Defendants leave to move for dismissal by April 1, 2017, and instructed Plaintiff to submit any opposition by May 1, 2017. (*See* Mot. Scheduling Order (Dkt. No. 81).) After receiving a brief extension from the Court, (*See* Dkt. No. 83), Defendants filed their Motion To Dismiss the Second Amended Complaint and accompanying papers on April 17, 2017. (*See* Dkt. Nos. 84–85.) Plaintiff has never responded. The Court will therefore consider the Motion fully briefed, but independently consider the merits of the Motion. *See Goldberg v. Danaher,* 599 F.3d 181, 183 (2d Cir. 2010) (explaining that district courts should consider the merits of a motion to dismiss rather than automatically grant the motion if a plaintiff fails to respond).

## II. Discussion

### A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alterations omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570; however, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted));

*Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a

dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as

true . . . ." (internal quotation marks and alterations omitted)).  Further, "[f]or the purpose of

resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the

plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014)

(citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n

ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument

attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by

reference," as well as "matters of which judicial notice may be taken, and documents either in

[the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing

suit."  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44

n.1 (2d Cir. 2014) (citation, internal quotation marks, and some alterations omitted); *see also*

*Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule

12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken." (internal quotation marks

omitted)); *Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y.

Dec. 20, 2013) (same).

    Lastly, because Plaintiff is proceeding pro se, the Court must construe his pleadings

liberally and "interpret them to raise the strongest arguments that they suggest."  *Maisonet v.*

*Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal

quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75

(2d Cir. 2006).  However, the liberal treatment afforded to pro se litigants does not excuse a pro

se party "from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

### B.  Analysis

Defendants move to dismiss Plaintiff's Second Amended Complaint on the grounds that Plaintiff: (1) failed to state a claim; (2) failed to adequately plead personal involvement; (3) cannot overcome Defendants' entitlement to qualified immunity; (4) is barred from official capacity suits under the Eleventh Amendment; and (5) is barred from pursuing certain state law claims.  (*See* Defs.' Mem. 3–4.)

#### 1.  Post-Release Supervision in New York

In 1998, the New York legislature passed a sentencing reform act, known as "Jenna's Law," which eliminated state parole for violent felony offenders, and made PRS a mandatory part of the sentences for those offenders.  *See* 1998 N.Y. Laws Ch. 1, § 15 ("Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision.") (codified at N.Y. Penal Law § 70.45(1) (McKinney 1998)).  "Under the law, certain violent felonies that had theretofore been punished by the imposition of indeterminate sentences were to be punished with a combination of a determinate sentence and a mandatory term of PRS [post-release supervision]."  *Scott v. Fischer,* 616 F.3d 100, 103 (2d Cir. 2010) (footnote omitted). However, "because PRS was presumed automatic, some judges did not state during sentencing that the defendant's sentence included a term of PRS.  In some cases, the defendants' commitment orders similarly omitted any reference to a PRS term.  Nonetheless, DOCS and Parole officials imposed terms of PRS administratively."  *Hassell v. Fischer*, 96 F. Supp. 3d 370, 375 (S.D.N.Y. 2015), *aff'd*, 879 F.3d 41 (2d Cir. 2018).  However, in 2005, the New York Court of Appeals ruled that a court must inform a defendant of the imposition of PRS at the time of the

guilty plea, and that the failure to do so was a violation of due process. *See People v. Catu,* 825 N.E.2d 1081, 1082–83 (N.Y. 2005).

In June 2006, the Second Circuit held that any administratively-imposed term of PRS was invalid and a violation of due process because, "[t]he judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment." *Earley v. Murray,* 451 F.3d 71, 75 (2d Cir. 2006). Moreover, *Earley* held that, pursuant to *Hill v. United States ex rel. Wampler,* 298 U.S. 460 (1936), any administrative modification of a sentence violated "clearly established federal law." *See id.* at 75–76. However, the Second Circuit made clear that an invalid sentence could be cured by resentencing a defendant in the sentencing court pursuant to New York Criminal Procedure Law § 440.40. *See id.* at 77 ("Our ruling is not intended to preclude the state from moving in New York courts to modify Earley's sentence to include the mandatory PRS term."). In 2013, the Second Circuit subsequently held that, for purposes of qualified immunity, the decision in *Earley* "clearly established" the unconstitutionality of administratively adding PRS conditions to a prisoner's sentence that were not pronounced by the sentencing judge at the time of sentence. *See Vincent v. Yelich,* 718 F.3d 157, 168 (2d Cir. 2013).

Between *Earley* and *Vincent,* the New York Court of Appeals in *People v. Sparber,* 889 N.E.2d 459 (N.Y. 2008) addressed the issue of whether administratively added PRS terms violated the New York Criminal Procedure Law and whether resentencing could cure such illegal sentences. *Id.* at 460–61. Ultimately, the *Sparber* court concluded that, for a term of PRS to be valid, the sentencing court was required to issue the PRS component at the sentencing, and that the "sole remedy" for any failure to do so is "to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement." *Id.* at 464–

66.  Subsequently, on June 30, 2008, the New York State Legislature passed Correction Law Section 601-d, which required DOCS to identify inmates who had been subjected to administratively-imposed PRS and then "notify the sentencing court of the court's prior failure to pronounce a PRS term for an inmate in custody, and the time within which an inmate must be resentenced." *Hassell*, 96 F. Supp. 3d at 376–77.  However, in 2010, the New York Court of Appeals in *People v. Williams*, 925 N.E.2d 878 (N.Y. 2010), "held that the resentencing of a defendant *after his or her release from prison* violates the Double Jeopardy Clause of the United States Constitution because, at that point, the defendant has 'a legitimate expectation in the finality of a sentence.'" *Hassell*, 96 F. Supp. 3d at 377 (quoting *Williams*, 925 N.E.2d at 889).

## 2.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "[Qualified] immunity protects government's ability to perform its traditional functions . . . by helping to avoid unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 566 U.S. 377, 389–90 (2012) (alteration, citation, and internal quotation marks omitted).  Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted).

The Supreme Court has held that when evaluating an asserted qualified immunity defense, a court may begin by examining whether a reasonable officer in the defendant's position would have believed his or her conduct would violate the asserted constitutional right. *See Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that judges are no longer required to begin by deciding whether a constitutional right was violated but are instead "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). The Supreme Court has further instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration, citations, and internal quotation marks omitted). Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 2094 (citations and internal quotation marks omitted). Put simply, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

In June 2006, the Second Circuit in *Earley* found that *Wampler* had clearly established that a state prisoner may not be subjected to an administratively imposed PRS term not pronounced at sentencing. *See Earley*, 451 F.3d at 75. In *Vincent*, the Second Circuit confirmed that the right to be free from an administratively imposed PRS term was clearly established by the *Earley* court*, holding that *Earley* itself, decided on June 9, 2006, "clearly established that

where the court has not included PRS in a defendant's sentence, DOCS may not add that term without violating federal law." *Vincent*, 718 F.3d at 168. Therefore, post-*Earley*, "state officials who imposed PRS after the sentencing court had failed to do so, are not entitled to qualified immunity unless, as *Earley* added, they take reasonable and prompt steps to remit an inmate to the sentencing court for resentencing." *Hassell*, 96 F. Supp. 3d at 379 (citing *Vincent*, 718 F.3d at 173–74).

Here, Plaintiff completed his term of imprisonment on May 2, 2008. (*See* SAC ¶ 13) Between his release from prison and his resentencing by the original sentencing court on June 20, 2008, Plaintiff was subject to a term of administratively-imposed PRS—in fact, his incarceration resulting from the violation of that administratively imposed PRS following his release appears to have been the impetus for Plaintiff's resentencing on June 20, 2008. (*See id.* ¶¶ 14–15, Ex. B, at unnumbered 19.) Thus, Defendants' entitlement to qualified immunity turns not on whether the right at issue was clearly established, which it was, but rather on whether it was objectively reasonable for Defendants to believe that their actions did not violate Plaintiff's right to be free from an administratively imposed term of PRS. Defendants argue that it was "objectively reasonable . . . not to take action before Plaintiff . . . had reached the maximum expiration date of his determinate sentence," (Defs.' Mem. 19), and also that Defendants' prompt completion of Plaintiff's resentencing, "within weeks of Plaintiff's release to PRS," (*id.* at 11), was "a reasonable amount of time within which to effect resentencing or release," (*id.* at 20).

Ultimately, "with respect to persons on whom PRS had been imposed administratively," Defendants here were required post-*Earley* to either, "have [the criminal defendant] resentenced by the court for the imposition of PRS terms in a constitutional manner or to excise the PRS conditions from [the defendants'] records and relieve them of those conditions." *Vincent*, 718

F.3d at 172. *Earley* did not specifically state when that resentencing was required to occur—i.e. during the term of incarceration or after release. However, the Second Circuit noted in *Earley* that when DOCS discovered the oversight regarding the PRS term, "the proper course would have been to inform the state of the problem, not to modify the sentence unilaterally. The state then could have moved to correct the sentence through a judicial proceeding, in the defendant's presence, before a court of competent jurisdiction." *Earley*, 451 F.3d at 76.

### a. Administrative Imposition of PRS

Plaintiff alleges that he was subject to an administratively-imposed PRS term from the period between May 2, 2008 and June 20, 2008, (*see* SAC ¶¶ 14–15), and was imprisoned at an unspecified time during that period as punishment for a technical violation of his administratively-imposed PRS, (*see id.* ¶ 15). However, "timely steps to remit [a plaintiff] to the sentencing court for resentencing . . . could confer a qualified immunity [under *Earley*]." *Hassell*, 96 F. Supp. 3d at 380. In considering whether a defendant took reasonable steps to comply with *Earley*, the Second Circuit and lower courts within the Second Circuit have considered a defendant's failure to act in the wake of both *Earley* and the prisoner's release. *See, e.g.*, *Betances v. Fischer*, 837 F.3d 162, 172 (2d Cir. 2016) ("The defendants did not take objectively reasonable steps to comply with *Earley* . . . because, even viewing the evidence in the light most favorable to them, it took Annucci 19 months, Tracy 15 months, and Fischer 14 months to take the first meaningful steps to bring their departments into compliance with *Earley*."); *Reyes v. Fischer*, No. 13-CV-1239, 2017 WL 4350440, at *9 (E.D.N.Y. Mar. 16, 2017) ("[M]ore than a year passed between the *Earley* [decision] and the plaintiff's release from incarceration, yet the defendants did not seek to have the plaintiff resentenced until . . . after she was released and subjected to administratively-imposed conditions of PRS, and jail time for

violating those conditions."); *Hassell*, 96 F. Supp. 3d at 381–82 (finding that the defendants' failure to act to resentence the plaintiff for "over 27 months after the Second Circuit's decision in *Earley* and over 6 months after PRS conditions were unconstitutionally-imposed on [the plaintiff]" was insufficient to "discharge [the defendants'] affirmative duty to promptly recommend [the plaintiff] for resentencing").

Plaintiff alleges that Defendants knowingly enforced the administratively-imposed PRS conditions through 2008, two years after *Earley*, and he also was imprisoned for a technical violation of that PRS term after *Earley*. (*See* SAC ¶ 15.) Defendants contend that, under *Earley*, the administrative imposition of PRS may be cured by resentencing, and that Defendants did in fact promptly cure within six weeks of Plaintiff's release to PRS. (*See* Defs.' Mem. 11, 19–20.) However, Defendants cite no law that supports the contention that they were under no obligation to act before Plaintiff's release. In fact, "[a]s *Betances* [] determined, [the defendants'] liability . . . arose from their unreasonable delay in acting to comply with *Earley* . . . for many months after that decision." *Hassell*, 879 F.3d at 51. As in *Hassell*, the fact that Defendants here notified the sentencing court of the need to resentence Plaintiff within weeks of the completion of his maximum sentence does "not absolve[] [Defendants] of . . . liability" related to their failure to promptly comply with *Earley*. *Id.* Accordingly, because "[D]efendants are foreclosed" by Second Circuit precedent from "arguing that their belated, albeit reasonable, steps to comply with *Earley* . . . excuse the initial unreasonable delay," qualified immunity is inappropriate at this stage. *Id.*

### b. Post-June 20, 2008 Resentencing

However, as to any conduct that occurred following Plaintiff's resentencing on June 20, 2008, Defendants are entitled to qualified immunity. For this period, Plaintiff contends that

Defendants' enforcement of the PRS term levied on June 20, 2008 by the sentencing court violated the double jeopardy protections guaranteed by the New York and federal constitutions. (*See* SAC ¶¶ 28– 30.) Plaintiff appears to rely upon the decision of the First Department in vacating his PRS term on November 20, 2012, which found that the imposition of a PRS term by the sentencing court *after* he had already completed his entire sentence was unlawful and a violation of his double jeopardy protections. *See People v. Aponte*, 954 N.Y.S.2d 78, 78 (App. Div. 2012) ("Although [the] defendant's original sentence in 2000 unlawfully omitted [PRS], the 2008 resentence adding PRS was also unlawful because defendant had already completed his entire sentence."). The First Department relied principally on *People v. Williams,* in which the Court of Appeals held that the resentencing of a defendant pursuant to New York Correction Law § 601–d *after* the defendant's release from confinement was a violation of the Double Jeopardy Clause of the United States Constitution because such post-release resentencing undercuts a defendant's reasonable expectation of finality. *See Williams,* 925 N.E.2d at 889. However, the Second Circuit has ruled that "[u]ntil the 2010 decision of the New York Court of Appeals in *People v. Williams* . . . it was not clearly established that *judicially* imposed PRS upon released prisoners was unlawful." *Hassell*, 879 F.3d at 50 (citing *King v. Cuomo*, 465 F. App'x 42, 45 (2d Cir. 2012)); *see also Ruffins v. Dep't of Corr. Servs.*, 907 F. Supp. 2d 290, 299 (E.D.N.Y. 2012) (same). Therefore, when Defendants remitted Plaintiff to his original sentencing court for resentencing on June 20, 2008, they did so prior to *Williams* clearly establishing that judicial resentencing after Plaintiff's release violated the Double Jeopardy

Clause. Accordingly, Defendants are entitled to qualified immunity for any conduct taking place after Plaintiff's judicial resentencing on June 20, 2008.[4]

### 3. Personal Involvement

Defendants also argue that Plaintiff fails to state a claim for the pre-June 20, 2008 period because his complaint lacks allegations of personal involvement on the part of the Defendants. (Defs.' Mem. 14–17.) "It is well settled in th[e] [Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brown v. City of New York*, No. 13-CV-6912, 2017 WL 1390678, at *6 (S.D.N.Y. Apr. 17, 2017) (internal quotation marks omitted). To establish liability, a plaintiff must show that the defendants "were personally involved in the allegedly unlawful conduct," *id.* at *7, because "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior," *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (italics omitted). Under § 1983, a supervisor may be shown to have been liable in the following ways:

> (1) actual direct participation in the constitutional violation[;] (2) failure to remedy a wrong after being informed through a report or appeal[;] (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue[;] (4) grossly negligent supervision of subordinates who committed a violation[;] or (5) failure to act on information indicating that unconstitutional acts were occurring.

---

[4] Moreover, even if Defendants were not entitled to qualified immunity, they would not be substantively responsible for any harm suffered by Plaintiff. As the Second Circuit found in *Hassell*, "the action of the state trial court in imposing PRS on [the plaintiff] was obviously an intervening cause of his post-resentencing PRS for which the defendants bore no responsibility." *Hassell*, 879 F.3d at 50; *see also Rivera v. Annucci*, No. 13-CV-1239, 2015 WL 590185, at *5 (E.D.N.Y. Feb. 11, 2015) (holding that "a state officer's compliance with a state law directing him to inform a court of the need for a resentencing proceeding cannot render that officer responsible for a double jeopardy violation that occurs when that proceeding takes place").

*Id.* at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).[5]

Moving Defendants in this Action were either DOCS or DOCCS officials (Fischer, Annucci, LeClaire, and Goord) or DOP officials (Evans, Dennison, Ellis, and Alexander). (*See* SAC ¶¶ 7–8.) Here, Plaintiff has adequately pled the personal involvement of each of these individuals as to the imposition of his administrative PRS term, alleging that they each served as high-ranking officials at DOCS, DOCCS, or DOP, were "responsible for the actions of all . . . employees," and each acted to "subject[] Plaintiff to unlawful custody by continuing to impose terms of [PRS] that had been declared unlawful and arresting and re-incarcerating Plaintiff for technical violations of those terms." (*Id.* ¶¶ 7–9.) These allegations are akin to the countless other § 1983 suits arising out of *Earley*. *See e.g.*, *Hassell*, 96 F. Supp. 3d at 385 (finding similar allegations that the defendants acted to impose an unconstitutional PSR term sufficient under *Vincent*). Construed liberally, accepted as true, and interpreted to "raise the strongest arguments that they suggest," *Maisonet*, 640 F. Supp. 2d at 347 (internal quotation marks omitted), these allegations make it plausible that Defendants allowed the continuance of a policy "under which unconstitutional practices occurred," such as the imposition of administrative PRS from May 2, 2008 through June 20, 2008. *Colon*, 58 F.3d at 873.[6] Accordingly, Plaintiff has adequately alleged personal involvement as to the administrative imposition of his PRS term.

---

[5] Though the decision in *Iqbal*, 556 U.S. 662, has called into question the validity of the *Colon* factors, "[t]his Court has already expressed its agreement with those cases holding that all five categories under *Colon* are still valid unless and until the Second Circuit holds otherwise." *Samuels v. Prack*, No. 13-CV-8287, 2017 WL 934706, at *6 (S.D.N.Y. Mar. 8, 2017).

[6] Defendants argue that LeClaire, Goord, Dennison, Ellis, and Alexander were retired from DOCS and Parole at the time of the allegedly unconstitutional actions. (*See* Defs.' Mem. 16.) However, Defendants provide no judicially noticeable materials indicating this to be the case.

## 4.  Official Capacity Claims

"The Eleventh Amendment bars suits for damages against states, state agencies and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity."  *Hensler v. N.Y. State Dep't of Envtl. Conservation*, No. 16-CV-3445, 2017 WL 2589311, at *3 (E.D.N.Y. June 14, 2017).  It is well-settled that New York State has not waived its sovereign immunity in § 1983 suits.  *See, e.g.*, *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 335 (E.D.N.Y. 2014) ("It is well settled that Congress did not abrogate the States' sovereign immunity by enacting § 1983 and New York has not waived its immunity."); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("The State of New York has not waived its sovereign immunity in regard to [§] 1983 actions nor has its sovereign immunity been abrogated.").  Accordingly, the claims asserted against the Defendants in their official capacities are barred by the Eleventh Amendment.  *See Moreau v. Peterson*, No. 14-CV-201, 2015 WL 4272024, at *5 (S.D.N.Y. July 13, 2015) ("[The] [d]efendants are employees of DOCCS and, as such, officials of the State of New York.  [The] [p]laintiff's claims against [the] [d]efendants in their official capacities are therefore considered to be claims against the State, and are barred by the Eleventh Amendment.").

## 5.  Due Process Claim

There is no question that Plaintiff's due process rights were violated when he was subjected to an administratively imposed PRS term from May 2, 2008 through June 20, 2008.  *See Earley,* 462 F.3d at 148 ( "[T]he inclusion of a . . . period of PRS in [a] sentence when that PRS was not included in the sentence imposed at [the plaintiff's] sentencing hearing violated his rights under the Due Process Clause of the United States Constitution.").  Defendants' argument that they "did not breach any duty to plaintiff," because "he received his resentencing hearing,"

(Defs.' Mem. 14), is without merit. It may be true that Plaintiff ultimately received a judicially

imposed term of PRS, but, as discussed at length above, that did not absolve Defendants of their

obligation to have Plaintiff resentenced at some point in the two year period between *Earley* and

his June 20, 2008 resentencing. *See Hassell*, 879 F.3d at 51 (holding that the defendants'

liability "arose from their unreasonable delay in acting to comply with *Earley* . . . for many

months after that decision," and the later notification of required resentencing upon the

completion of the plaintiff's maximum sentence does "not absolve[] [Defendants] of . . .

liability" due to their failure to promptly comply with *Earley*).

   To the extent Defendants assert that, because state courts and other state actors "declined

to facilitate the remedy [of resentencing]," Plaintiff suffered no harm because he "would have

experienced no different result even if . . . Defendants had referred him for resentencing earlier,"

(Defs.' Mem. 11–12), the Second Circuit has previously rejected that argument in *Vincent*:

> [W]e think it clear that DOCS, which (a) unconstitutionally imposed PRS, (b) was
> custodian of the records in which PRS was imposed and from which PRS was
> required to be excised (in the absence of appropriate resentencing), and (c)
> resumed custody of persons who violated the unconstitutionally imposed
> conditions and were penalized for those violations by reimprisonment, had an
> obligation to at least attempt to cease its administrative and custodial operations
> that had been held to violate federal law.

*Vincent,* 718 F.3d at 172–73. Defendants are thus foreclosed from claiming that any attempt to

resentence Plaintiff prior to his eventual resentencing in June 2008 was effectively futile, as

Defendants were not relieved of their independent obligation to comply with the mandate set

forth in *Earley*. That Plaintiff *eventually* received the remedy is of no relevance here, because

the Second Circuit has made clear that the cognizable due process violation is the

unconstitutional administrative imposition of PRS post-*Earley*, and that DOCS "had an

obligation to at least attempt to cease its administrative and custodial operations that had been

held to violate federal law." *Id.* at 172–73.[7]  Accordingly, Plaintiff has adequately alleged a due process claim at this stage.

<u>6.  False Imprisonment Claim</u>

Defendants argue that Plaintiff has failed to state a claim for false imprisonment because Plaintiff's confinement was privileged.  (Defs.' Mem. 13.)  To establish a false imprisonment claim under § 1983, Plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *7 (S.D.N.Y. Mar. 9, 2017) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)).  It is only the fourth element—whether the confinement was privileged—that is at issue here.

However, because, "[l]ike the question of qualified immunity, the question of privilege turns on whether [D]efendants' actions were objectively reasonable," *Bentley v. Dennison*, 852 F. Supp. 2d 379, 398 (S.D.N.Y. 2012), *aff'd sub nom. Betances v. Fischer*, 519 F. App'x 39 (2d Cir. 2013), no such privilege is applicable at this stage.  That is, because Defendants' imposition of the PRS term was objectively unreasonable post-*Earley*, it was therefore unreasonable to incarcerate Plaintiff based upon violation of a PRS term that Defendants knew was unconstitutional upon its administrative imposition.  Because, at this stage, Defendants have not shown that Plaintiff's re-incarceration was privileged pursuant to a valid warrant for violation of

---

[7] Moreover, Defendants' argument that Plaintiff suffered no harm based upon the imposition of administrative PRS, as well as his re-incarceration pursuant to a violation of that administrative PRS, has similarly been rejected by the Second Circuit.  *See Hassell*, 879 F.3d at 52 (affirming nominal damages for the three-month period in which the plaintiff was subjected to an administrative PRS term).

that PSR term, *see Hardy v. City of New York*, 732 F. Supp. 2d 112, 140 (E.D.N.Y. 2010) ("[A]n arrest and imprisonment are privileged where the arrest is made pursuant to a warrant valid on its face and issued by a court having jurisdiction even though the process may have been erroneously or improvidently issued." (alteration and internal quotation marks omitted)), Plaintiff's claim relating to his incarceration pursuant to his administratively imposed PRS may proceed.

### 7.  Cruel and Unusual Punishment

Plaintiff has also alleged that he was subjected to cruel and unusual punishment.  (SAC ¶¶ 28–30.)  However, Plaintiff has not supported this claim with any factual allegations, and the Court independently has not found any basis to hold that an administratively imposed PRS term violates the Eighth Amendment.  *Cf. Earley,* 462 F.3d at 148 ("[T]he inclusion of a . . . period of PRS in [a] sentence when that PRS was not included in the sentence imposed at [the plaintiff's] sentencing hearing violated his rights under the Due Process Clause of the United States Constitution."); *Bentley*, 852 F. Supp. 2d at 398 (allowing the plaintiff to assert a claim for unlawful imprisonment stemming from alleged violations of an administratively imposed PRS term).  Accordingly, Plaintiff's claim that his administratively imposed PRS term constituted an Eighth Amendment violation is dismissed without prejudice.[8]

---

[8] To the extent there is a claim under the Eighth Amendment, that claim fails here.  For extended incarceration to rise to the level of an Eighth Amendment violation, it "must . . . be the product of deliberate indifference." *Campbell v. Peters,* 256 F.3d 695, 700 (2d Cir. 2001); *see also Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (same); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985) ("Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest; otherwise, such detention can be held to be unconstitutional only if it violates due process." (citations omitted)).  Assuming, without deciding, that Plaintiff has adequately alleged Defendants' deliberate indifference, Plaintiff's term of less than two months on administratively-imposed PRS would not meet the threshold of prolonged incarceration sufficient to violate the Eighth Amendment.  *See Brunson v. Duffy*, 14 F.

### 8. State Law Claims

To the extent that Plaintiff seeks to pursue state law claims against Defendants, those claims are barred pursuant to Section 24 of the New York Correction law.[9]  "It is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ieradi v. Sisco,* 119 F.3d 183, 186 (2d Cir. 1997); *see also Hassell*, 96 F. Supp. 3d at 385 (same). The Second Circuit has held that Section 24 operates to prevent federal courts from exercising supplemental jurisdiction over state law claims appended to § 1983 claims.  *See Ieradi*, 119 F.3d at 186–87 ("It is well settled that [§] 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall

---

Supp. 3d 287, 294 (S.D.N.Y. 2014) (holding that the plaintiff's release "twenty-one days after he filed the [habeas corpus] petition" does not cross the threshold of an Eighth Amendment violation); *Gilblom v. Gillipsie,* No. 08–CV–1672, 2010 WL 1813494, at *9 (W.D. Pa. Apr. 6, 2010) (noting that "[c]ases in which an Eighth Amendment claim has been recognized in the context of an overstay [in prison] involve significant periods of time," and citing cases involving 145 days to two years of prolonged confinement), *adopted by* 2010 WL 1813483 (W.D. Pa. May 5, 2010), *aff'd,* 435 F. App'x 165 (3d Cir. 2011); *Herron v. Lew Sterrett Justice Ctr.,* No. 07–CV–357, 2007 WL 2241688, at *3 (N.D. Tex. Aug. 6, 2007) ("Unauthorized confinement for thirty-one days does not raise a harm of a constitutional magnitude.").

[9] Section 24 provides, in relevant part:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department ..., in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24.

within the scope of the statute. Such immunity is available whether the action is pursued in a state court or, under pendent jurisdiction, in a federal court." (citations omitted)); *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir. 1996) (same)

Nevertheless, "the protection afforded by [§] 24 is not absolute," but rather "limited . . . to acts or omissions occurring within the scope of an officer's employment and in the discharge of his or her duties." *Ieradi*, 119 F.3d at 187 (alterations and internal quotation marks omitted). Here, Plaintiff's allegations regarding the allegedly illegal imposition of administrative PRS are by their very nature based on Defendants' actions within the scope of their employment. *See Hassell*, 96 F. Supp. 3d at 385 (holding that "state law claims for money damages against various DOCS and Parole officials in their personal capacity" relating to the imposition of invalid PRS terms fall within the ambit of New York Correction Law § 24). Accordingly, because "only the New York State Court of Claims has proper jurisdiction to hear Plaintiff's state law claims because he has alleged acts that clearly fall within the scope of [the defendants'] employment duties," *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *12 n.8 (S.D.N.Y. Sept. 30, 2015) (alteration and internal quotation marks omitted), the Court is obligated to dismiss those claims for lack of subject matter jurisdiction, *see Tavares v. N.Y.C. Health & Hosps. Corp.,* No. 13–CV–3148, 2015 WL 158863, at *10 (S.D.N.Y. Jan. 13, 2015) ("State-law claims for damages against DOCCS employees within the scope of their employment must be brought in the New York Court of Claims as claims against New York State.").

### III. Conclusion

Defendants' Motion To Dismiss is granted in part and denied in part. Plaintiff's due process and false imprisonment claims for the period between May 2, 2008 and June 20, 2008 may proceed, while all other claims are dismissed. However, because this is the first

adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, this Action will proceed with Plaintiff's due process and false imprisonment claims for the period between May 2, 2008 and June 20, 2008.

The Clerk is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 84), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated:     February 28, 2018
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

25