UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELIX APONTE,

        Plaintiff,

    v.

BRIAN FISCHER, *et al*.,

        Defendants.

No. 14-CV-3989 (KMK)

OPINION & ORDER

Appearances:

Felix Aponte
Stormville, NY
*Pro se Plaintiff*

Michael J. Keane, Esq.
Barbara Kathryn Hathaway, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

   Pro se Plaintiff Felix Aponte ("Plaintiff"), currently incarcerated at Green Haven

Correctional Facility ("Green Haven"), brings this Action, pursuant to 42 U.S.C. § 1983, against

Defendants, alleging that he was illegally detained in state prison outside of his criminal sentence

term. (*See* Second Am. Compl. ("SAC") (Dkt. No. 51).)[1]  Before the Court is Defendants'

---

[1] "Defendants" refers to the Superintendent of Downstate Correctional Facility
("Downstate") Ada Perez ("Perez"), former Commissioner of the New York State Department of
Correctional Service ("DOCS") Brian Fischer ("Fischer"), Deputy Commissioner of the New
York State Department of Corrections and Community Supervision ("DOCCS") Anthony J.
Annucci ("Annucci"), former Acting Commissioner of DOCS Lucien J. Leclaire ("Leclaire"),
former Commissioner of DOCS Glenn S. Goord ("Goord"), Chair and Chief Executive Officer
("CEO") of the New York State Division of Parole ("DOP") Andrea W. Evans ("Evans"),
Executive Director of DOP Mark Mantei ("Mantei"), former Chair of DOP Robert J. Dennison

Motion for Summary Judgment (the "Motion").  (*See* Not. of Mot. (Dkt. No. 115).)  For the

reasons explained herein, the Motion is partially granted and partially denied.

## I.  Background

### A.  Factual Background

The following facts are taken from Defendants' statement pursuant to Local Civil Rule

56.1, (*see* Defs.' Local Rule 56.1 Statement in Supp. of Mot. ("Defs.' 56.1") (Dkt. No. 117)), the

exhibits submitted by Defendants, (Decl. of Nigel Joseph in Supp. of Mot. ("Joseph Decl.");

Decl. of Noreen Hart in Supp. of Mot. ("Hart Decl."); Decl. of Kristina M. Lennon in Supp. of

Mot. ("Lennon Decl."); Decl. of Michael J. Keane, Esq. in Supp. of Mot. ("Keane Decl."); Decl.

of Charles Quackenbush in Supp. of Mot. ("Quackenbush Decl.") (Dkt. Nos. 118–22)), as well

as Plaintiff's Second Amended Complaint ("SAC"), (*see* SAC), and are recounted in the light

most favorable to Plaintiff, the non-movant, *see Wandering Dago, Inc. v. Destito*, 879 F.3d 20,

30 (2d Cir. 2018).  Defendants have sent the required Local Rule 56.2 Notice to Plaintiff.  (*See*

Dkt. No. 116.)[2]

---

("Dennison"), former Executive Director of DOP Anthony G. Ellis ("Ellis"), and former Chair
and CEO of DOP George B. Alexander ("Alexander").  (*See* Dkt.)

  [2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise
statement, in numbered paragraphs, of the material facts as to which the moving party contends
there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party must then
submit "a correspondingly numbered paragraph responding to each numbered paragraph in the
statement of the moving party, and if necessary, additional paragraphs containing a separate,
short[,] and concise statement of additional material facts as to which it is contended that there
exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a
fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to
the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation
marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).
"A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No.
13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (citation and italics omitted).
Here, Defendants filed and served their 56.1 Statement, (*see* Defs.' 56.1), in addition to a
statement notifying Plaintiff of the potential consequences of not responding to the Motion, as

On February 28, 2018, this Court, following Defendants' Motion To Dismiss the SAC, issued an Opinion & Order (the "2018 Opinion") holding that Plaintiff had stated a claim as to Plaintiff's alleged due process violations and false imprisonment claims for the period between May 2, 2008 and June 20, 2008.  (*See* Op. & Order ("2018 Op.") 24–25 (Dkt. No. 86).)[3] Accordingly, the Court recites the facts necessary to adjudicate those claims only.

---

required by Local Rule 56.2, (Dkt. No. 116).  Despite this notice, Plaintiff failed to submit a response to Defendants' 56.1 Statement.  Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response (citation omitted)); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and quotation marks omitted)).  The Court will therefore consider whether any facts in the record contradict Defendants' 56.1 Statement.

[3] The Court notes that its use of the May 2, 2008 date came from Plaintiff's allegation in his SAC that that was the day he was slated to complete his term of imprisonment.  (*See* 2018 Op. 3 (citing to SAC ¶ 13).)  Discovery had not yet taken place, and the Court had only Plaintiff's allegations to inform its understanding of the relevant dates.  As the now-complete record demonstrates, and as discussed throughout this Opinion & Order, Plaintiff was subject to a maximum expiration date of his determinate term of June 6, 2008 before he was resentenced in 2008.  (*See* Defs.' 56.1 ¶¶ 15–16.)

On May 5, 2000, pursuant to an April 25, 2000 guilty plea, Plaintiff was sentenced to a maximum determinate term of eight years of incarceration in New York State Supreme Court for New York County.  (Defs.' 56.1 ¶ 2; *see also* Keane Decl. Ex. F ("Pl.'s Sentence & Commitment") (Dkt. No. 121-6); DOCCS, Inmate Information, http://nysdoccslookup.doccs.ny.gov (last visited Feb. 21, 2020) (DIN # 00A2739) (hereinafter "Pl.'s DOCCS Profile").)   At the time Plaintiff was sentenced, New York Penal Law § 70.45(1) ("Jenna's Law") was in place, which requires a court to impose, in addition to a determinate sentence, "an additional period of post-release supervision."  N.Y. Penal Law § 70.45(1). However, at the time that Plaintiff was sentenced, Jenna's Law did not require judges to explicitly state the mandatory term of post-release supervision ("PRS") at sentencing.  (Defs.' 56.1 ¶ 4.)  In 2008, however, following rulings from both state and federal courts declaring the practice unconstitutional, Jenna's Law was amended to replace a provision that indicated that sentences would automatically include PRS terms with the current provision that requires judges to articulate and explicitly impose a PRS term at sentencing.  (*Id.*; *see also* Keane Decl. Ex. G ("Governor's Program Bill 2008") ("Section 3 of the bill amends [Jenna's Law] to modify procedural provisions for determinate sentences to be imposed in the future.  It replaces a provision that such sentences automatically include [PRS] terms with one that requires courts to state such terms explicitly in the course of pronouncing [the] sentence.") (Dkt. No. 121-7).)

In 2000, at Plaintiff's sentencing, the judge did not specifically articulate a PRS period, and no PRS was documented in the hearing minutes.  (Defs.' 56.1 ¶ 5 (citing SAC ¶¶ 10–12).) Plaintiff's Sentence and Commitment did not document a PRS term, either.  (*See* Pl.'s Sentence & Commitment.)  After his conviction, Plaintiff was transferred from Rikers Island to Downstate.  (Defs.' 56.1 ¶ 7; *see also* Pl.'s DOCCS Profile.)  On May 30, 2000, after entering

Downstate, DOCS calculated Plaintiff's sentence.  (Defs.' 56.1 ¶ 8.)[4]  Plaintiff's sentence was calculated to include both the eight-year determinate term pronounced at his sentencing and an automatic five-year term of PRS mandated by Jenna's Law.  (*Id*. (citing Hart Decl. ¶ 5).)  DOCS treated the legislatively-mandated PRS term as automatically appended to the sentence of imprisonment, without confirming whether the PRS term had been separately pronounced at sentencing.  (*Id*. ¶ 9.)  Plaintiff's expiration date of his determinate term was estimated to be February 13, 2008.  (*Id*. ¶ 10.)  DOCS assumed a tentative conditional release eligibility date of December 21, 2006 and calculated that the end of Plaintiff's automatically imposed five-year PRS term would be approximately January 16, 2012.  (*Id*. (citing Hart Decl. ¶¶ 5–6).)

On January 16, 2007, Plaintiff was given conditional release to PRS to serve the remainder of his sentence on parole.  (*Id*. ¶ 11.)  Upon release, Plaintiff signed a Certificate of Release indicating that the maximum expiration date of his determinate term was February 13, 2008, and that the maximum expiration date of his PRS was January 16, 2012.  (*Id*.; *see also* Joseph Decl. Ex. A ("Cert. of Release") (Dkt. No. 118-1).)  Defendants aver that the terms and conditions to which a parolee may be subject are the same, regardless of whether a parolee is categorized as "conditional release to parole" or under PRS.  (Joseph Decl. ¶ 10.)  Although "conditional release" refers to obtaining parolee status *within* an imprisonment term, "PRS" refers to parolee status *after* the imprisonment term has ended.  (*Id*.)  According to Defendants, the "day-to-day experience of parolees is not materially different whether one is serving either kind of parole supervision."  (*Id*.)

Three weeks after his release, Plaintiff was arrested in Kings County for two felonies and two misdemeanors.  (Defs.' 56.1 ¶ 12; *see also* Joseph Decl. Ex. B ("2007 Arrest Not.") (Dkt.

---

[4] "DOCS" is the precursor to the current state agency "DOCCS."

5

No. 118-1).)  Plaintiff was charged with eight violations of the terms and conditions of his

parole.  (Defs.' 56.1 ¶ 13; *see also* Joseph Decl. Ex. C ("PRS Violation Not. & Report") (Dkt.

No. 118-1).)  Plaintiff appeared before an Administrative Law Judge ("ALJ") for a hearing on

June 12, 2007, where the ALJ determined that he should be sent to the Willard Drug Treatment

Center ("DTC") for a voluntary program.  (Defs.' 56.1 ¶ 14; *see also* Joseph Decl. Ex. D ("June

Parole Revocation Decision Not.") 0017 (Dkt. No. 118-1).)  Plaintiff refused to enter Willard and

was then subject to another hearing before an ALJ on July 30, 2007.  (Defs.' 56.1 ¶ 15; *see also*

Joseph Decl. Ex. E ("July Parole Revocation Decision Not.") (Dkt. No. 118-1).)  There, the ALJ

decided that Plaintiff would be given a delinquent time assessment of 12 months.  (Defs.' 56.1

¶¶ 15–16; July Parole Revocation Decision Not. 0033, 0035.)  At the time that Plaintiff was

reincarcerated, pursuant to DOCCS records, Plaintiff's original sentence had a maximum

determinate term of June 6, 2008 and a PRS term that would expire in 2013.  (*See* Defs.' 56.1

¶ 16; Lennon Decl. ¶ 3.)  Over the following year, Plaintiff was transferred out of Willard and

housed at other DOCS facilities until June 4, 2008, when he was sent to Rikers Island.  (Defs.'

56.1 ¶ 17.)  Plaintiff was allegedly transferred to Rikers because his sentencing court had ordered

Plaintiff to appear for a resentencing hearing to correct the earlier failure to pronounce his five-

year PRS term during his 2000 sentencing.  (*Id.*)[5]  Although Plaintiff was ordered to appear for

his resentencing before the maximum expiration date of June 6, 2008, Plaintiff was somehow not

actually resentenced until June 20, 2008.  (Defs.' 56.1 ¶¶ 19–21.)  Therefore, Plaintiff was

---

[5] The resentencing was ordered pursuant to state and federal court holdings that determined that an administratively-imposed term of PRS that was not pronounced by a judge at a sentencing hearing was a violation of due process.  These legal developments were summarized in the Court's 2018 Opinion, (*see* 2018 Op. 9–11), and will be discussed as needed further below.

detained for 14 days beyond the maximum expiration date of his judicially-imposed determinate term for a violation of his PRS terms solely for the purpose of being resentenced.  (*Id.* ¶ 26.)

The June 20, 2008 rehearing culminated in a vacatur of the sentence imposed in 2000, and a resentencing of eight years imprisonment with three years PRS to be imposed nunc pro tunc to the original arrest date of February 14, 2000.  (*See* Keane Decl. Ex. I ("2008 Resentencing Order") (Dkt. No. 121-9).)  The 2008 Resentencing Order also instructed DOCS to calculate the new term of imprisonment, plus the PRS, without accounting for the current violation of the administratively-imposed PRS period.  (*See id.*)  The newly calculated term was a term of imprisonment that expired on February 13, 2008, and a term of PRS that was estimated to expire on January 16, 2010.  (Lennon Decl. ¶ 6.)

Defendants also put forth facts averring that a number of individual Defendants were not occupying any professional role of relevance during the actionable time period of May 2 to June 20, 2008.  For example, Leclaire was employed as Acting Commissioner of DOCS between Goord's retirement and Fischer's assumption of that role, i.e., between August 2006 and January 2007.  (Quackenbush Decl. ¶¶ 4–6.)  Goord had retired from his position as Commissioner of DOCS by August 2006.  (*Id.* ¶ 6.)  Evans did not begin working as Chair of Parole until 2009.  (*Id.* ¶ 7.)  Dennison retired as Chair of Parole in 2004.  (*Id.* ¶ 8.)  Ellis, who was the Executive Director of Parole, is averred not to have been "in a position that involved him in duties related to PRS."  (*Id.* ¶ 9.)  Lastly, although Defendants acknowledge that Alexander was the Chair of Parole during the relevant time period, they claim that he was not involved in any PRS-related issues because, during the relevant time period, Plaintiff was in the custody of "New York City DOCS."  (*Id.* ¶ 10.)

B.  Procedural History

The procedural history of this Action has been summarized in previous Opinions &
Orders, so this Court assumes familiarity with the procedure of this case up until the issuance of
the 2018 Opinion.  On February 28, 2018, this Court issued the 2018 Opinion, which dismissed
all claims other than the due process and false imprisonment claims for the period between May
2, 2008 and June 20, 2008.  (2018 Op. 24.)  Those dismissals were without prejudice, and
Plaintiff was given 30 days to file an amended pleading correcting any deficiencies in those
claims.  (*Id*. at 25.)

Plaintiff did not file any amended pleading, and Defendants filed an Answer on May 1,
2018.  (*See* Ans. (Dkt. No. 89).)  On June 12, 2019, the Court held a Status Conference, where
the Parties determined that fact discovery would be completed by August 12, 2019.  (*See* Dkt.
(minute entry for June 12, 2019).)  The case was referred to Magistrate Judge Lisa M. Smith for
the purposes of pre-trial discovery.  (*See* Dkt. No. 101.)

On July 17, 2019, the Court approved a proposed briefing schedule for the instant Motion
in which Defendants were to serve their opening papers on Plaintiff on September 15, 2019;
Plaintiff's opposition was to be served on Defendants by October 31, 2019; and Defendants'
reply was to be served on Plaintiff by November 15, 2019.  (*See* Dkt. No. 107.)  The Court
granted an extension to this briefing schedule on October 1, 2019, whereby Defendants agreed to
file all relevant papers by December 2, 2019.  (*See* Dkt. No. 112.)  On December 2, 2019,
Defendants' opening papers were uploaded to the Docket.  (*See* Not. of Mot.; Defs.' 56.1; Joseph
Decl.; Hart Decl.; Lennon Decl.; Keane Decl.; Quackenbush Decl.; *see also* Defs.' Mem. of Law
in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 123).)  Plaintiff had never served an opposition, and

Defendants did not serve a reply, so the Court deemed the Motion fully submitted on December 4, 2019. (*See* Dkt. No. 126.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that

there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012)

(emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings,"

*Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks

omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for

summary judgment is properly supported by documents or other evidentiary materials, the party

opposing summary judgment may not merely rest on the allegations or denials of his pleading

. . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v.

Harris*, 550 U.S. 372, 380 (2007).

　　　　"On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental

Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role

of the court is not to resolve disputed issues of fact but to assess whether there are any factual

issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should

be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr

Labs. Inc*., 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence

that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d

736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the

statements 'must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso*, 691 F.3d at 230 (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr*., 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)).  Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court.").  And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he credibility of [Plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact.").

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at

*7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se

litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest,"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation

marks omitted).  Moreover, "the failure to oppose a motion for summary judgment alone does

not justify the granting of summary judgment."  *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also*

*Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the

legal validity of an entry of summary judgment should . . . be[] made in light of the opposing

party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does not otherwise

relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald

assertions unsupported by evidence . . . are insufficient to overcome a motion for summary

judgment."  *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe*

*Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks

omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2

(S.D.N.Y. July 31, 2017) (same).

    B.  Analysis

       1.  Personal Involvement

    At the outset, Defendants argue that the record demonstrates that there is no dispute of

fact on the question that only Fischer and Annucci could personally have been involved in any of

the acts that led to Plaintiff's purported due process and false imprisonment claims.  (*See* Defs.'

Mem. 10–11.)

    "It is well settled that, in order to establish a defendant's individual liability in a suit

brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the

alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citations and alterations omitted).  In other words, "[b]ecause vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*,

556 U.S. 662, 676 (2009).  Therefore, Plaintiff must plausibly allege that Defendants' actions fall

into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290,

2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[]

with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Defendants argue that the only individuals who could plausibly have been personally

involved in any purported violations were Annucci and Fischer.  (*See* Defs.' Mem. 11.)

According to Defendants, the other individuals were either not employed by DOCS during the

relevant time period or did not have duties that encompassed the administration of PRS.  (*See id.*)

In support of this argument, Defendants offer the following facts: Goord was Acting

Commissioner of DOCS until August 2006, when he retired, (Quackenbush Decl. ¶ 6); Leclaire

was only Acting Commissioner of DOCS from August 2006 to January 2007, (Quackenbush

Decl. ¶¶ 4–6); Dennison retired from his position as Chair of Parole in 2004, (*id.* ¶ 8); Evans did

not begin serving as Chair of Parole until 2009, (*id.* ¶ 7); Alexander, who was the Chair of Parole

during the relevant time period, was not involved with Plaintiff's detainment between May 2,

13

2008 and June 20, 2008 because Plaintiff was in New York City DOCS custody at the time, (*id.*
¶ 10); and Ellis, who was the Executive Director of Parole, was not involved with any PRS-
related duties, (*id.* ¶ 9).

The Court agrees that the record establishes that Goord, Leclaire, Dennison, and Evans
were either retired or not yet serving in the relevant positions during Plaintiff's potentially
actionable time period of May 2 to June 20, 2008 and therefore cannot be held responsible for
any purported violations that affected Plaintiff's rights.  As for Alexander and Ellis, who are both
DOP officials, other district courts in the Second Circuit have held that, where a plaintiff fails to
provide any evidence or make any allegations "beyond the job titles" of DOP defendants, a
reasonable juror is able to infer at most that DOP defendants engaged in negligence, which
"cannot support liability for a due process violation."  *Betances v. Fischer*, 144 F. Supp. 3d 441,
456 (S.D.N.Y. 2015) (footnotes omitted) (dismissing Alexander and Ellis from a similar
complaint), *aff'd*, 837 F.3d 162 (2d Cir. 2016).  This is in part because there was no evidence—
and there is similarly no evidence here—that the DOP defendants were "in any way involved
with the actual administrative imposition of PRS," given that the DOP "only has jurisdiction
over inmates who have [already] been released on [PRS]."  *Scott v. Fischer*, No. 07-CV-11303,
2009 WL 928195, at *5 (S.D.N.Y. Mar. 30, 2009) (citing N.Y. Exec. Law § 259-a), *aff'd*, 616
F.3d 100 (2d Cir. 2010).  Moreover, as discussed below, the Court does not find that there was a
due process violation as to Plaintiff's re-incarceration following his violation of parole
conditions in early 2007.  Accordingly, although the Second Circuit has acknowledged that "the
practice of re-incarcerating persons who violated their administratively-imposed PRS was a
practice of the [DOP]" and not DOCS, the only viable violation at issue in this case did not stem
from Plaintiff's *reincarceration*.  *Scott v. Fischer*, 616 F.3d 100, 110 (2d Cir. 2010).

14

Accordingly, the Court grants the Motion on personal involvement grounds as to Defendants Goord, Leclaire, Dennison, Evans, Alexander, and Ellis.[6]

On the other hand, similar claims against Fischer and Annucci have survived personal involvement arguments in other cases because "the claim[s] against [them] [were] not based on [their] role[s] in revoking the plaintiff's parole, but arose instead from DOCS' ensuing custody of the plaintiff after the violation of the unlawful PRS." *Santiago v. Fischer*, No. 09-CV-1383, 2016 WL 1118448, at *6 (E.D.N.Y. Mar. 21, 2016) (citing *Vincent v. Yelich*, 718 F.3d 157, 173 (2d Cir. 2013)); *see also Reyes v. Fischer*, 934 F.3d 97, 101 (2d Cir. 2019) ("Defendants Fischer[ and] Annucci . . . each understood the holding of *Earley I* and that it 'applied to their departments' but deliberately refused to comply." (citation omitted)); *Betances*, 144 F. Supp. 3d at 453 (noting that, "[a]s counsel to DOCS," Annucci was response for "implement[ing] judicial decisions with apparent impact of DOCS's calculation of sentences" and that Fischer, "[a]s [C]ommissioner, . . . had the authority to decide whether to change DOCS's policy related to

---

[6] For similar reasons, Defendant Perez can also be dismissed for lack of personal involvement. Perez is alleged only to be the Superintendent of Downstate. However, nothing in the record demonstrates that Perez was involved in the critical timeframe of June 6 to June 20, 2008. Following re-incarceration, Plaintiff was only at Downstate for two days in November 2007, which, as discussed below, falls within the confines of a period when Plaintiff received sufficient process, given the fact that he would have been under the purview of conditional release anyway. (Joseph Decl. Ex. F. ("Pl.'s DOCS Locator Chron.") (Dkt. No. 118-1).) Plaintiff also fails to mention Perez by name anywhere in his SAC. Accordingly, Perez is also dismissed for lack of personal involvement. *See Colon v. Coughlin*, 58 F.3d 865, 873–74 (2d Cir. 1995) (affirming district court's dismissal of certain defendants for lack of personal involvement in a pro se action at summary judgment where "there [was] no basis for a jury finding of gross negligence (or deliberate indifference)" with regard to those defendants); *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (affirming the dismissal of a defendant for lack of personal involvement in pro se action at summary judgment where the plaintiff "offer[ed] no concrete evidence to the contrary" and did not properly allege personal involvement in the complaint); *King v. Falco*, No. 16-CV-3215, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (holding personal involvement not shown where the "plaintiff . . . fail[ed] to make any substantive allegations against [the defendant] in the body of the complaint").

PRS" (footnotes omitted)); *Hassell v. Fischer*, 96 F. Supp. 3d 370, 384–85 (S.D.N.Y. 2015) (finding that personal involvement was sufficiently established as to, inter alia, Annucci and Fischer because they knew they "had an obligation to refer [the plaintiff] for resentencing"), *aff'd*, 879 F.3d 41 (2d Cir. 2018).  In the absence of any caselaw indicating otherwise from Defendants, the Court concludes that Annucci and Fischer should not be dismissed for lack of personal involvement.

### 2.  Liability for the Applicable Period of Incarceration

Any potential liability in this Action stems from a body of Second Circuit law declaring a DOCS practice of administratively imposing PRS terms unconstitutional.  In 1998, the New York state legislature passed Jenna's Law, which made PRS a mandatory part of sentences for violent felony offenders.  *See* 1998 N.Y. Laws Ch. 1, § 15 ("Each determinate sentence also includes, as a part thereof, an additional period of [PRS].") (codified at N.Y. Penal Law § 70.45(1) (McKinney 1998)).  However, because PRS was imposed automatically, state judges frequently did not articulate during sentencing that a criminal defendant's term included a term of PRS.  Instead, DOCS would go on to impose PRS terms administratively after the sentencing. *See Hassell v. Fischer*, 879 F.3d 41, 42 (2d Cir. 2018).  In *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), the Second Circuit held that "clearly established Supreme Court precedent," namely *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936), instructed that the practice of administratively adding a PRS term to a criminal sentence where the PRS term was not articulated by the sentencing judge is unconstitutional.  451 F.3d at 75–76.  In *Earley*, the Second Circuit instructed the district court to determine whether the underlying habeas petition was timely filed, and if it was, to "issue a writ of habeas corpus excising the term of [PRS] from [the petitioner's] sentence and relieving him of any subsequent penalty or other consequence of its

imposition." *Id.* at 76–77.  However, the Second Circuit also noted that it would be an

acceptable remedy for the state to move in state court "to modify [the criminal defendant's]

sentence to include the mandatory PRS term." *Id.* (footnote omitted).

In 2013, the Second Circuit clarified that the *Earley* decision had, for the purpose of a

qualified immunity analysis, "clearly established that where the court has not included PRS in a

defendant's sentence, DOCS may not add that term without violating federal law." *Vincent*, 718

F.3d at 168.  *Vincent* also noted that Annucci's inaction for months or years in the face of the

2006 *Earley* decision meant that Annucci was not eligible for qualified immunity on this issue.

*See id.* at 173–74.  Furthermore, *Vincent* clarified that DOCS officials had two alternative ways

to proceed in the face of *Earley*—either to have the criminal defendant resentenced by a court for

the imposition of the PRS term or to excise the PRS conditions and relieve the criminal

defendant of those conditions.  *Id.* at 172.  However, the first alternative—submitting a criminal

defendant for resentencing—would only be available if DOCS officials acted with "objective

reasonableness" and not undue delay in resentencing the defendant.  *Id.* at 177.  *Betances v.*

*Fischer*, 837 F.3d 162 (2d Cir. 2016), further established that DOCS officials "did not take

objectively reasonable steps to comply with" *Earley*, noting that it took Annucci 19 months and

Fischer 14 months "to take the first meaningful steps to bring their departments into

compliance."  *Id.* at 172.

In 2018, the Second Circuit partially affirmed a district court's grant of nominal damages

to a plaintiff subject to an unconstitutional PRS term in *Hassell*, 879 F.3d 41.  There, the district

court granted nominal damages for the period of incarceration beginning June 3 to December 3,

2008, but, on appeal, the Second Circuit limited the amount of damages to the period of

September 1 to December 3, 2008.  879 F.3d at 51–52.  The Second Circuit explained that, even

though the plaintiff had been subject to an administratively imposed PRS when he was released on February 29, 2008, he was only released from custody because of good time credits, and, in fact, his judicially-imposed sentence of incarceration was scheduled to continue until August 31, 2008. *Id.* at 51–52. Therefore, during the period between his release—February 29—and the end of his constitutional sentence—August 31—the plaintiff "would have been subject to conditional release during this time period had a PRS term not been imposed." *Id.* at 52. Because the plaintiff had "made no showing that the conditions of his PRS term were in any respect more onerous than those of conditional release would have been[,]" the Second Circuit concluded that the plaintiff had "not suffered a denial of his due process rights during that period." *Id.*

The facts here are similar to those in *Hassell*. Although Plaintiff was released early from prison on January 16, 2007, his determinate sentence was scheduled to continue until February 13, 2008. (Defs.' 56.1 ¶¶ 11–12.) Therefore, until February 13, 2008, even in the absence of an administratively-imposed PRS, Plaintiff would have been subject to "conditional release," which is when a criminal defendant "serve[s] the remainder of his or her determinate sentence in the community." *Reyes*, 934 F.3d at 105 (citations and quotation marks omitted). Like in *Hassell*, Plaintiff, following discovery, has not made any showing that he was subject to any "more onerous" terms during his conditional release than he would have been during a PRS term. *Hassell*, 879 F.3d at 52. Plaintiff's re-arrest on February 8, 2007, for two felonies and two misdemeanors involving drug possession, (2007 Arrest Not.), occurred on a date where Plaintiff would have been subject to conditional release terms even if the PRS term had not been administratively imposed on him. Plaintiff was subsequently sentenced to a time assessment of 12 months due to those infractions and his lack of compliance with a program at Willard DTC,

and the record does not show that Plaintiff would have experienced any less "onerous" repercussions had this occurred during conditional release instead of administratively-imposed PRS. (Defs.' 56.1 ¶¶ 15–16.) At the time of Plaintiff's reincarceration, Plaintiff's maximum determinate term, pursuant to his judicially-imposed sentence, was estimated to have an expiration date of June 6, 2008. (Lennon Decl. ¶ 4; Defs.' 56.1 ¶¶ 19, 25.) Accordingly, the Court concludes that no due process violation occurred for the period leading up to June 6, 2008 and grants summary judgment for Defendants to this extent. *See Hassell*, 879 F.3d at 52; *see also Garcia v. Falk*, 788 F. App'x 796, 798–99 (2d Cir. 2019) (affirming district court's grant of summary judgment where, following discovery, the plaintiff failed to "adduce[ any] facts showing that the conditions of his PRS were 'more onerous' than those of conditional release"); *cf. Reyes*, 934 F.3d at 106 (noting that it may be premature to dismiss a case based on the equivalence between conditional release and PRS terms where *no discovery* had yet occurred).

However, some of Plaintiff's time as an inmate remains unaccounted for. Between June 6 and June 20, 2008, Plaintiff continued to remain in custody in Rikers Island, where he was awaiting resentencing, presumably to bring his PRS term into compliance with *Earley*. (Defs.' 56.1 ¶¶ 16, 19.) But given that the sentence related to his infractions expired on June 6, 2008, Plaintiff's subsequent detainment for 14 days does not fall within any legitimate determinate sentence, and Defendants provide no justifiable explanation as to why these 14 days would not result in liability. To the extent Defendants seek to argue that the 14-day detention was objectively reasonable in their efforts to comply with *Earley*, this fails because it is not the *length* of Plaintiff's detainment that establishes the reasonableness of Defendants' actions but rather how long *after Earley* Defendants sought to resentence Plaintiff. Given that *Earley* was decided in June 2006, this Court cannot agree that Plaintiff's 14-day detainment in June *2008* between

the expiration of his sentence and his resentencing was justified or compliant with due process. *See Hassell*, 879 F.3d at 51 ("That the defendants eventually took reasonable steps to comply with *Earley I* cannot excuse their unreasonable delay in doing so." (citation and quotation marks omitted)); *see also Reyes*, 934 F.3d at 104 (noting that it was not reasonable not to seek resentencing of a criminal defendant subject to administratively-imposed PRS in October 2008, "more than two years after [the Second Circuit] decided *Earley I* and more than one year after . . . when [the criminal defendant] was released from prison and began serving her administratively[-]imposed term of PRS"); *Betances*, 837 F.3d at 172 ("The defendants did not take objectively reasonable steps to comply with *Earley* . . . because, even viewing the evidence in the light most favorable to them, it took Annucci 19 months, Tracy 15 months, and Fischer 14 months to take the first meaningful steps to bring their departments into compliance . . . ."). Plaintiff was incarcerated for his original sentence until January 16, 2007, over 6 months after *Earley* was decided.  Plaintiff was then re-arrested for additional offenses in February 2007, re-incarcerated in July 2007, and subject to a term that was set to expire on June 6, 2008. Defendants offer no explanation as to why, during this lengthy period of incarceration and repeated interaction with DOCS, Plaintiff was never resentenced to be compliant with *Earley* or why it was only two weeks *past* Plaintiff's maximum expiration date that this long overdue act of due process finally took place.[7]

---

[7] And although, on June 20, 2008, Plaintiff was resentenced nunc pro tunc to a PRS term that was estimated to expire on January 16, 2010, this does not cure the deficient process that led to Plaintiff's unexplained 14-day detainment.  "It may be true that Plaintiff received a judicially imposed term of PRS, but . . . that did not absolve Defendants of their obligation to have Plaintiff resentenced at some point in the two year period between *Earley* and his June 20, 2008 resentencing."  (2018 Op. 20 (citation omitted).)

Therefore, although it may be true that *Hassell* clarified that Plaintiff may not recover for any period of incarceration up to June 6, 2008, his maximum determinate sentence, *see Hassell*, 879 F.3d at 52, Plaintiff's subsequent 14-day detention following that date cannot be attributed to either an effective "conditional release" period or Defendants' objectively reasonable behavior. Indeed, it was only due to Defendants' inability to timely comply with *Earley* that Plaintiff was detained for that period of time.  Therefore, the Court declines to grant summary judgment to Defendants for the period June 6 to June 20, 2008.

### 3.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  (Defs.' Mem. 16.)  To begin, this argument merely recites the standards applicable to qualified immunity law and summarily applies them to the facts.  As such, the Court is not required to consider it.  *See Osorio v. Westchester County*, No. 18-CV-5620, 2019 WL 3958443, at *1 n.2 (S.D.N.Y. Aug. 21, 2019) (declining to consider a qualified immunity argument where the defendants "merely restate the qualified immunity caselaw without meaningfully applying it to the facts of the case").

Regardless, qualified immunity would not apply to the period at issue, June 6 to June 20, 2008.  Defendants seek to argue, without citing any caselaw, that it was not "clearly established" that it would violate Plaintiff's rights to "hold him for a brief period" in 2008 before resentencing him, (Defs.' Mem. 17), but this argument again misses the point, which is that the unreasonableness stems from Defendants' lack of compliance with *Earley* since it was published in *2006*.  The Second Circuit and lower courts within it have already determined that qualified immunity in this context does not apply to Defendants Annucci and Fischer given their clear understanding of the state of the law after *Earley* and their failure to bring their departments into

21

compliance for a year or more afterwards.  This Court follows *Hassell*, where the fact that the defendants notified the state court of the need to resentence the plaintiff only two weeks after his sentence expired was deemed "irrelevant" to the qualified immunity analysis; instead, the defendants' liability stemmed "from their unreasonable delay in acting to comply with *Earley I* for many months after that decision, and [the defendants] are not absolved of that liability in this case by a step they took" later.  879 F.3d at 51; *see also Vincent*, 718 F.3d at 166 ("[W]e conclude that *Earley I* itself, in June 2006, clearly established that the administrative imposition of PRS terms not imposed by the court is unconstitutional.  We conclude further that as to Annucci . . . the dismissals as a matter of law on the basis of qualified immunity on the present record were inappropriate."); *Santiago v. Fischer*, No. 09-CV-1383, 2009 WL 3852001, at *6 (E.D.N.Y. Nov. 18, 2009) (declining to grant qualified immunity to officials who did not comply with *Earley* in a timely fashion).  Therefore, the Court does not grant qualified immunity for Annucci or Fischer, the two remaining Defendants in this case.

### 4.  False Imprisonment Claim

Defendants also argue that Plaintiff cannot establish the elements of any tort of false imprisonment under 42 U.S.C. § 1983.  (Defs.' Mem. 14.)  Although the Court does not explicitly see the existence of a false imprisonment claim in the SAC, the Court addresses this argument for completeness' sake.  Federal courts look to New York state law to determine the elements of the cause of action.  *See Tobias v. County of Putnam*, 191 F. Supp. 2d 364, 375 (S.D.N.Y. 2002).  Such a claim requires a showing that "(1) the defendant intended to confine the plaintiff; (2) the plaintiff did not consent to the confinement; (3) the plaintiff was aware that he was confined; and (4) the confinement was not otherwise privileged, such as confinement pursuant to a warrant or with probable cause or immunity protection."  *Id.* (citation and quotation

marks omitted).  Only the fourth element—whether the confinement was privileged—is in question here.

Although Plaintiff's imprisonment may have been in violation of due process, pursuant to *Earley* and related case law, that does not necessarily lead to the conclusion that Plaintiff's detainment between June 6 and June 20, 2008 was not otherwise privileged, especially given that he was detained pursuant to a state court's order to hold him for resentencing.  (*See* Defs.' 56.1 ¶ 27.)  Under New York law, "where a facially valid order issued by a court with proper jurisdiction directs confinement, that confinement is privileged and everyone connected with the matter is protected from liability for false imprisonment."  *Holmberg v. County of Albany*, 738 N.Y.S.2d 701, 703 (App. Div. 2002) (citation omitted).  Indeed, under similar circumstances, in *Santiago*, although the Court determined that the plaintiff's claims stemming from an administratively-imposed PRS term survived the defendants' motion to dismiss, the false arrest claim failed because, even though the defendants may have "lacked the power to impose PRS in the first place," the plaintiff's detainment was pursuant to a "facially" valid arrest warrant.  2009 WL 3852001, at *7; *see also Hardy v. City of New York*, 732 F. Supp. 2d 112, 140 (E.D.N.Y. 2010) ("[T]he fact that administratively imposed PRS has been invalidated as a practice does not change the conclusion that [the plaintiff's] arrest was privileged."); *Nazario v. State*, 884 N.Y.S.2d 580, 587–88 (Ct. Cl. 2009) ("Importantly, the confinement is no less privileged where a defendant has been successful in procuring his release from prison in a habeas corpus proceeding.  Thus, the fact that the detainer has been determined to be illegal . . . does not render the State liable in a subsequent claim for false imprisonment." (citations omitted)), *aff'd*, 905 N.Y.S.2d 328 (App. Div. 2010).  The cited cases pertain to arrests that took place during an administratively-imposed PRS term, whereas here, the Court has determined that Plaintiff's only

23

actionable period stems from two weeks of additional detainment outside of a legitimate determinate term of incarceration. However, that factual distinction does not change the analysis as to Plaintiff. Plaintiff's additional detainment here, according to the record, was the result of a court order seeking to resentence Plaintiff and constitutionally impose a PRS term nunc pro tunc. (Defs.' 56.1 ¶ 27.) Although this Court has determined that the delay in resentencing Plaintiff was not objectively reasonable and that any constitutional period of incarceration expired on June 6, 2008, the order seeking to detain Plaintiff until he could be resentenced nevertheless creates a "privileged confinement that does not give rise to an action for false . . . imprisonment." *Knowles v. Johnson*, No. 08-CV-4741, 2010 WL 1050973, at *4 (S.D.N.Y. Mar. 23, 2010) (citation omitted). Accordingly, the Court dismisses Plaintiff's false imprisonment claim.

     5.  Damages

     Defendants argue that Plaintiff is only entitled to nominal damages of $1.00 as a matter of law for any period of unconstitutional incarceration. (Defs.' Mem. 14.) However, it was Defendants, not Plaintiff, who moved for summary judgment, in an effort to foreclose Plaintiff's attempt to hold Defendants liable. All the Court may do is analyze the merits of Defendants' Motion, which it has partially denied. Plaintiff has not moved for any form of judgment, nominal or otherwise. Further, based on the record, it is not clear that Plaintiff is only entitled to nominal damages. Indeed, the Second Circuit has previously determined that, where a plaintiff is "deprived of his liberty, and the conduct of the defendant[s] responsible for the deprivation [is] found to be unlawful," the plaintiff may be "entitled to compensatory, not merely nominal damages." *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004) (citation omitted). Some "New York cases uphold [jury] awards of up to $10,000 for even short periods of confinement without proof of actual damages." *Id.* (citation omitted) (collecting cases). Given

that the Court has partially denied Defendants' Motion, pursuant to the normal life cycle of a litigation, Plaintiff may be entitled to present what remains of his case before a jury—including how his injuries might merit compensatory damages.

Defendants point to *Betances*, 403 F. Supp. 3d 212, and to *Hassell v. Fischer*, No. 13-CV-1992, 2016 WL 10920013 (S.D.N.Y. July 18, 2016), *aff'd in part, vacated and remanded in part*, 879 F.3d 41 (2d Cir. 2018), to support its damages argument. However, neither case is applicable to the present circumstances. In *Hassell*, 2016 WL 10920013, Plaintiff was counseled and had counter moved for summary judgment. *See id.* at *1. It is unclear from the court's decision in that case whether Plaintiff had asked for the nominal damages sum of $600 or whether the court determined that to be an appropriate number. *See id*. at *2. In any event, Plaintiff here is not counseled and has not counter moved for summary judgment, so the Court cannot assume the kind or amount of damages he would seek to recover from a jury on the remaining issues in this case. As for *Betances*, the court there determined that only nominal damages were available for the group of plaintiffs who complained of a period of incarceration that was later "rendered valid" by a resentencing nunc pro tunc. *See* 403 F. Supp. 3d at 232–34 (citation and quotation marks omitted). But, here, the critical period of potentially unlawful detainment was *not* covered by the resentencing nunc pro tunc. Plaintiff's resentencing resulted in a maximum determinate term of up to February 13, 2008. (*See* Lennon Decl. ¶ 6.) The Court has denied summary judgment for Defendants as to a *later* period of detention, i.e., June 6 to June 20, 2008.[8]  Plaintiff's case is more analogous to the group of *Betances* plaintiffs who had

---

[8] The 2008 Resentencing Order instructed DOCS to calculate the new term of imprisonment, plus the PRS, *without* accounting for the 2007 violation of the administratively-imposed PRS period. (*See* 2008 Resentencing Order.) However, as discussed above, Plaintiff is not entitled to recover for the entire period of incarceration between February 13, 2008 and his release in June 2008, because, even if PRS were not administratively imposed, Plaintiff would

arguably suffered a "loss of liberty . . . as a result of [an] *unlawful* detention," and were given an opportunity to recover compensatory damages.  403 F. Supp. 3d at 231 (emphasis added) (citation and quotation marks omitted).  Therefore, Defendants' application to limit Plaintiff to only nominal damages as a matter of law is denied.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment with respect to Defendants Goord, Leclaire, Dennison, Evans, Alexander, Ellis, and Perez and any false imprisonment claim, but denies it as to liability and qualified immunity for Annucci and Fischer for Plaintiff's detainment for the period of June 6 to June 20, 2008.

Plaintiff is instructed to respond within 30 days of the date of this Opinion & Order with a brief explanation of why he is entitled to more than nominal damages of $1 for his detainment in June 2008.  Plaintiff should note that a finding of deprivation of a constitutional right "does not automatically entitle him to a substantial award of damages."  *Kerman*, 374 F.3d at 123. Even where a jury finds that a right to due process may have been infringed, it may "reasonably find that only nominal damages are appropriate where, for example, a plaintiff's testimony as to his injuries lacks objective support or credibility," or even where a plaintiff only suffered "relatively minor physical injuries."  *Id*. at 123.  A jury is also "not required to credit [a plaintiff's] subjective representations" of emotional or psychological suffering.  *Id*. at 123–24. Therefore, Plaintiff is advised to submit realistic estimates of damages to compensate for "*actual* injury caused by the denial of his constitutional rights."  *Randolph v. Metro. Transp. Auth.*, No. 17-CV-1433, 2019 WL 1567663, at *8 (S.D.N.Y. Apr. 11, 2019) (emphasis added) (citation and

---

still have been subject to substantially similar conditional release terms at the time of his 2007 arrest.  *See supra* Section II.B.2.

quotation marks omitted).  If Plaintiff does not submit his response in a timely fashion, he may receive an award of only $1 in nominal damages.

      The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 115), and mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:     April 20, 2020
            White Plains, New York

                             KENNETH M. KARAS
                             UNITED STATES DISTRICT JUDGE